New-York Special Term, March, 1848.  *Hurlbut*, Justice.

Stuart and wife *vs.* Kissam and others.

It is not necessary in order to create a trust for the separate use of a married woman, that any particular technical form of words shall be used.   It is sufficient if there appears a clear intent to give the property to the wife for her own benefit, and to exclude the husband.

Where the trust is for the *sole* use and benefit of the wife, and the property is vested in a third person as trustee for her, and all moneys received from the trust property are to be paid to her *individually*, these circumstances are equivalent to a provision for payment to the wife upon her separate or individual receipt; and are therefore sufficient to exclude the husband.

A suit brought by husband and wife, in relation to the wife's separate estate, is so far considered the suit of the husband, as that a decree made in it, adverse to the wife's claim, will not bar her from a subsequent suit in her own name, by her next friend, for the same matter.

Therefore, the defendant against whom such a bill is filed, has the right, if he avail himself of it in season, to require that the suit shall be in such form as to make. the decree conclusive upon the wife; so that he may not be subjected to the risk of being twice vexed for the same demand.

And where he takes the objection in season, it is a matter of course to permit the form of the suit to be amended, by striking out the name of the husband as plaintiff, and making him a defendant, and appointing a next friend for the wife.

Where the defendant litigates the suit upon the merits, and takes this objection of form for the first time at the hearing, the objection cannot be urged as matter of strict right, and should not, in general, be sustained.

But *it seems* it is in the discretion of the court, in such a case, even at the hearing, to order the form of the suit to be amended, so as to make the decree conclusive upon the wife; where such a course is necessary to protect the substantial rights of the defendant.

Where a suit is brought in relation to the wife's separate estate, in which suit the husband is joined as plaintiff, merely because the forms of law do not permit a married woman to institute a suit in her own name alone, but he has no interest in the subject matter of the suit, and claims none, and no relief is sought by him, his relation to the suit is analogous to that of a next friend; and his acts and declarations in respect to the matters in litigation are not evidence in the suit, nor binding upon the wife.

Where the whole subject matter of a suit belongs to the wife, who complains that her trustee has dealt improperly with her property, it is no answer for him to say that the husband, who had no interest in such property, nor right to interfere with it in any way, nor power to bind or affect the wife's interest in respect to it, consented to the breach of trust.

Stuart *v.* Kissam.

A transaction between a trustee and his *cestui que trust*, during the existence of that relation, resulting in an advantage to the trustee, and a loss to the *cestui que trust*, is always scrutinized, in a court of equity, with a watchful and jealous eye. And it will never be sustained, to the disadvantage of the *cestui que trust*, except upon the most complete and satisfactory evidence of good faith and fair dealing on the part of the trustee; the fullest communication by him of all circumstances affecting the subject matter of the bargain; the entire comprehension, by the *cestui que trust*, of the nature and effect of his acts; and the absence of any suspicion of undue influence.

Where a trustee of the separate estate of a married woman, having become seised, in his own right, of the greater part of the premises covered by a mortgage for $20,000 belonging to his *cestui que trust*, acknowledged satisfaction of such mortgage, and caused it to be cancelled of record; and soon afterwards conveyed to his brother one-third of the mortgaged premises, and took back from him a mortgage upon the part of the premises so conveyed to him, together with his bond, to secure the payment of $20,000, payable at the same time as the original bond and mortgage; which mortgage the trustee substituted in lieu of the cancelled mortgage, and executed a declaration of trust declaring that he held the same in trust for the separate use of his *cestui que trust;* but the property covered by the substituted mortgage was an inadequate security for the $20,000, not being worth more than $10,000 or $12,000; on a bill filed by the *cestui que trust* alleging that the original bond and mortgage had never been paid or satisfied, that the cancelment of the mortgage, by her trustee, was without her knowledge or assent, and insisting that it was a breach of trust, a decree was made establishing the original bond and mortgage as valid and existing securities, saving the rights of subsequent bona fide mortgagees; and directing a sale of the mortgaged premises, and the payment of the deficiency, if any, out of the estate of the obligor in such bond.

Where a defendant relies upon an admission in the bill to establish his defence, he must, as a general rule, take the whole of such admission. He cannot avail himself of such part of the admission as makes in his favor, and reject the residue.

Legatees who have received their legacies are liable to refund to a creditor, if he cannot collect his debt from the executors, by reason of their having wasted or misapplied the assets, and become insolvent.

IN EQUITY. The bill in this cause was filed by Robert Stuart and Mary R. his wife, for the purpose of enforcing a bond and mortgage made by Daniel W. Kissam, junior, for $20,000, which were held in trust for the plaintiff, Mrs. Stuart, by the defendant Joseph Kissam, who, it was alleged, fraudulently acknowledged satisfaction of the mortgage, without actual payment or satisfaction, and caused it to be cancelled of record. The plaintiff Mrs. Stuart sought to establish the bond debt against the estate of Daniel W. Kissam, junior, who

was deceased, and to have a decree for its payment out of that estate in due course of administration, and to subject to the lien of the mortgage all the lands which it originally covered, save such portions as had passed into the hands of bona fide purchasers or mortgagees. The facts are very fully stated in the opinion of the court. The cause was heard upon pleadings and proofs.

*J. A. & J. E. White,* for the plaintiffs.

*C. D. Sackett,* for Sturges and wife and John O. Kissam.

*B. T. Kissam,* for Concklin and wife and Maria Kissam.

*A. P. Man,* for Anna E. Cooke.

*E. Sandford,* for Joseph Kissam and other defendants.

HURLBUT, J. The first question to be determined is, whether the trust upon which Joseph Kissam held the bond and mortgage was one for the separate use of Mrs. Stuart, so as to bar her husband of his marital rights in respect to the subject matter of the trust. This becomes important in view of the alleged assent of Robert Stuart to the acts of Joseph Kissam. The facts bearing upon this question are these. On the 30th day of October, 1830, Spencer D. Colton, being seised in fee of a tract of land in the twelfth ward of the city of New-York, known as subdivision No. 3, of the Turtle Bay farm, executed a declaration of trust, declaring that the consideration money which had been paid for such premises was the proper money of the plaintiff Mary R. Stuart, and that the premises had been conveyed to, and were held by him, in trust for her sole use and benefit, separate and apart from her husband, as if she were a feme sole; and covenanting that he would convey the same in such manner as she should direct. And for the performance of this covenant Colton bound himself to Benjamin M. Jackson, as trustee for the separate use of Mrs. Stuart, in the penal sum

of $10,000.  On the 29th of April, 1833, Colton conveyed the premises mentioned in the declaration of trust, for the consideration of $24,000, to Daniel W. Kissam, junior, who, to secure a portion of the purchase money, executed to Colton his bond, secured by a mortgage upon the whole of the premises so conveyed to him, conditioned for the payment of $20,000 on or before the 1st day of May, 1843.  On the 3d day of May, 1833, Colton assigned this bond and mortgage to Joseph Kissam, who, on the same day, executed a declaration of trust, declaring that the same had been assigned to him for the sole use and benefit of, and in trust for, Mrs. Stuart, and that he would account for and pay over to her individually all moneys that might be received thereon.

The trust thus declared by Joseph Kissam is clearly valid within the revised statutes; it being a trust of personal property for a purpose not forbidden by law.  But it is contended that the instrument creating it did not so limit the property to the separate use of Mrs. Stuart, as to preclude her husband from claiming it in virtue of his marital rights.

It is not necessary, in order to create a trust for the separate use of a married woman, that any particular technical form of words shall be used.  It is sufficient that there appear a clear intent to give the property to the wife for her own benefit, and to exclude the husband.  In this case the trust is for the *sole* use and benefit of Mrs. Stuart; the property is vested in a third person as trustee for her, a circumstance of weight, though not conclusive; and all moneys received from the trust property are to be paid to her *individually*.  This is, I think, equivalent to a provision for payment to the wife upon her separate or individual receipt, and so sufficient to exclude the husband. (*Hartley* v. *Hurle*, 5 *Vesey*, 540.)

But the claim of Mrs. Stuart, to hold the property in question for her separate use, rests not alone upon the declaration of trust executed by Joseph Kissam.  His trust sprang out of, and was in fact but a continuation of, the one previously vested in Colton.  It is said that the trust declared by Colton was invalid, as being a trust of lands for a purpose not authorized by

Stuart *v.* Kissam.

the revised statutes. Be this as it may, I cannot doubt that, after Colton had so far executed the trust as to convert the lands into personalty, Mrs. Stuart could in equity have compelled him to account to her for the proceeds. (*See Hess* v. *Fox*, 10 *Wend.* 436.) And whatever rights she had in this respect were expressly secured to her separate use, apart from her husband. And even if there was any difficulty in the legal enforcement of the obligation thus resting upon Colton, it was obviated by his voluntary recognition and fulfilment of that obligation by transferring the bond and mortgage in question to Joseph Kissam as a substituted trustee. It is impossible to suppose that when that transfer was made, it was the intention of either Colton or Mrs. Stuart so to vary the trust as to destroy the whole interest of Mrs. Stuart in the trust property and vest it in her husband; and there can, I think, be no doubt that when the bond and mortgage were assigned to Joseph Kissam he took them in trust for the separate use of Mrs. Stuart, in conformity with the intention of the original declaration of trust executed by Colton. In considering the rights of Mrs. Stuart in respect to this trust, I have laid out of view the statements contained in the bill filed by Van Shaaick and others against Robert Stuart and others, tending to show that the consideration for the original conveyance to Colton in fact proceeded from Robert Stuart, and that the title was taken in Colton's name for the purpose of defrauding R. Stuart's creditors. These statements are upon information and belief only, and are not even upon oath. They are claimed to be evidence against the plaintiffs, upon the ground that by introducing in evidence the answer which was put in to that bill by D. W. Kissam, junior, the plaintiffs have made the bill evidence against themselves. I do not think the bill evidence, except for the purpose of explaining or applying the statements contained in the answer to it which was given in evidence, and clearly the statements contained in that bill, of the information and belief of the plaintiffs in that suit in respect to the facts there alleged, are not evidence against the plaintiffs in this suit, of the existence of such facts.

The next question to be determined arises upon an objection taken by some of the defendants, that this suit, as one relating to the wife's separate estate, cannot be maintained by husband and wife as co-plaintiffs, but that the wife should have sued separately by her next friend, making the husband a defendant. It is clear that in strictness the suit should have been so brought, and if the objection had been taken by demurrer, or perhaps in the answers, it would have prevailed; but it is made for the first time at the hearing, and I think comes too late. (*Bowers* v. *Smith*, 10 *Paige's Rep.* 193, 201.) A suit brought by husband and wife, in relation to the wife's separate estate, is so far considered the suit of the husband as that a decree made in it adverse to the wife's claim, will not bar her from a subsequent suit in her own name, by her next friend, for the same matter. Therefore the defendant against whom such a bill is filed, has the right, if he avail himself of it in season, to require that the suit shall be in such form as to make the decree conclusive upon the wife; so that he may not be subjected to the risk of being twice vexed for the same demand. He is not bound, in such a suit, to enter into any litigation of the merits, but may object, preliminarily, to being impleaded in a suit where a determination in his favor will not protect him from a second suit for the same cause. And where the objection is so taken, it is a matter of course to permit the form of the suit to be amended, by striking out the name of the husband as plaintiff, making him a defendant, and appointing a next friend for the wife. ( *Wake* v. *Parker*, 2 *Keen's Rep.* 60, *England* v. *Downs*, 1 *Beavan's Rep.* 96.) Where the defendant litigates the suit upon the merits, and takes this objection of form for the first time at the hearing, the objection cannot be urged as matter of strict right, and should not in general be sustained. But I think it is still in the discretion of the court, in such case, to order the form of the suit to be amended so as to make the decree conclusive upon the wife; where such a course is necessary to protect the substantial rights of the defendant, as where the wife's claim is sustained in part only, or where there is a litigated account to be taken, and the defen-

Stuart *v.* Kissam.

dant, if such an amendment were not made, might, after fully satisfying the decree made against him, be subjected to a second suit for those matters litigated in the first suit which were there decided in his favor upon the merits. Were this a case of that kind, I would order the hearing to stand over for such an amendment; but as the decree which I shall make will so dispose of the whole matter in litigation as effectually to protect the defendants from any subsequent suit by Mrs. Stuart, I do not think it proper to subject the parties to the expense and delay of such a proceeding.

Another point is taken by the defendants, in connection with the one last disposed of, which may as well be considered here. It is said that Robert Stuart, being joined as plaintiff, his acts and declarations in respect to the matters in litigation are evidence in the cause, and bind Mrs. Stuart in this suit, though they would not in a suit instituted by her separately; upon the principle that in a suit by two plaintiffs no decree can be made to which they are not both entitled. I think this position is unsound. The husband is merely a formal party. He has no interest in the subject matter of the suit, and claims none ; no relief is sought by, or can be decreed to him. He is joined as plaintiff in this case, because the forms of our law do not permit a married woman to institute a suit in her own name, alone. Either her husband must join, or she must sue by a next friend. Where the suit relates to the wife's separate estate, in which the husband has no interest, and he is joined as plaintiff, his relation to the suit is very similar, if not precisely analogous to that of a next friend. The whole subject matter of this suit belongs to the wife. She complains that her trustee has dealt improperly with her property. It is no answer for him to say that her husband, who had no interest in such property, no right to interfere with it in any way, no power to bind or affect her interests in respect to it, consented to the breach of trust. It seems to me that Mrs. Stuart is no more precluded, in this suit, from impeaching the acts of Joseph Kissam in respect to the property held by him in trust for her separate use, by reason of the assent of her husband to such

Stuart *v.* Kissam.

acts, than she would have been in a suit instituted by her sep-
arately, by reason of the assent given to such acts by a stran-
ger, who had been subsequently appointed her next friend, and
by whom she prosecuted her suit.   In either case, the answer
of Mrs. Stuart to the trustee setting up such assent in bar of
her rights would be the same ; that he had no right to regard
or act upon the assent of a stranger in respect to dealings with
her property, but was bound to procure the assent of herself,
the sole party in interest.

I come now to the consideration of the merits of this con-
troversy.

On the 7th day of April, 1835, Daniel W. Kissam, jun. died,
being at the time of his death seised of the lands conveyed to
him by Colton ; and the bond and mortgage for $20,000 re-
maining outstanding in the hands of Joseph Kissam, in trust
for the separate use of Mrs. Stuart, as before mentioned.   D.
W. Kissam, jun. left a will, whereby he appointed his brothers,
Samuel and Timothy T. Kissam his executors ; and after giving
certain pecuniary legacies, devised and bequeathed the whole
residue of his estate to his three brothers, Joseph, (before men-
tioned,) Samuel, and Timothy T., and his two sisters, Maria,
and Elizabeth Helen, the wife of R. M. Conklin, in equal
shares.   The two executors named proved the will.   It is al-
leged in the bill, and admitted in the answers of Joseph, Sam-
uel and Timothy T. Kissam, that Joseph and Samuel Kissam
were each interested to the extent of one-third in the original
purchase made by Daniel W. Kissam, jun. though the title
was taken in the name of the latter, and he was the only per-
son ostensibly interested.   On the 19th of November, 1835, the
premises covered by the mortgage in question having been
divided into 126 city lots, were offered for sale at auction by
Joseph and Samuel Kissam and the other residuary devisees
of D. W. Kissam, jun.   Twelve of the lots were sold and con-
veyed to Gilbert Leggett, and eight to V. P. Shattuck and John
Ackland.   The others, 106 in number, were bid off by Joseph
Kissam, who received from Samuel Kissam and the other re-
siduary devisees of D. W. Kissam, jun. a conveyance of all

their interest in the same, bearing date December 3, 1835.
Joseph Kissam thus became seised in fee of the greater part of
the premises covered by the mortgage held by him as trustee
for Mrs. Stuart; but as he held the fee in his own right, and
the mortgage as trustee, there was of course no merger.   The
conveyance to Joseph Kissam last mentioned, was recorded on
the 16th of December 1835, and was probably then delivered; and
on that day, Joseph Kissam acknowledged satisfaction of the
mortgage in question, and caused it to be cancelled of record.
On the 6th of January, 1836, Joseph Kissam conveyed to his
brother, Samuel Kissam, 42 lots, part of the premises in ques-
tion, and took from Samuel a bond for $20,000, payable at the
same time as the bond of D. W. Kissam, jun. before mention-
ed, secured by a mortgage upon the 42 lots.   On the same day
Joseph Kissam executed a new declaration of trust, declaring
that he held this bond and mortgage of Samuel Kissam, in
trust, for the separate use of Mrs. Stuart, and delivered it to
Isaac A. Johnson, who had been the legal adviser of Colton
and Mrs. Stuart in relation to the trust property in question,
and in that capacity had possession of the first declaration of
trust executed by Joseph Kissam.   Mr. Johnson thereupon de-
livered up that first declaration of trust to Joseph Kissam, who
cancelled it, or attempted to do so, by tearing off the seal.   The
conveyance by Joseph to Samuel Kissam, and the bond and
mortgage given by the latter, were made merely for the accom-
modation of Joseph Kissam, for the purpose of furnishing him
with a security to be substituted for the bond and mortgage of
D. W. Kissam, jun.   Samuel Kissam made no real purchase
of the 42 lots, and when he gave his bond and mortgage he
received from Joseph Kissam a covenant to indemnify him
against the same.   In April, 1840, Samuel Kissam being in
failing circumstances, reconveyed to Joseph the 42 lots.   Joseph
Kissam continued to pay to Mrs. Stuart interest upon the sum
of $20,000 until the year 1842, when he ceased doing so, hav-
ing become insolvent; and it is alleged by the plaintiffs that in
August of that year they for the first time discovered the acts
and doings of Joseph Kissam in respect to the trust property

held by him. In October, 1842, Joseph Kissam, still holding the 42 lots which had been reconveyed to him by Samuel Kissam, as before stated, Mrs. Stuart requested him to convey them to William Stewart, as a trustee for her, expressly reserving however, in the letter in which she made the request, her claim upon the original mortgage. Joseph Kissam accordingly conveyed the 42 lots to William Stewart, who now holds them. But as they are confessedly an inadequate security for the $20,000, being probably worth some $10,000 or $12,000 only, Mrs. Stuart claims the right to collect the amount of the deficiency which may exist, after the sale of those lots and the application of their proceeds towards the payment of the debt due to her, out of the residue of the lands embraced in the original mortgage of Daniel W. Kissam, jun., (saving however the rights of bona fide purchasers, and mortgagees,) and if there shall still be a deficiency, then from the executors, devisees and legatees of Daniel W. Kissam, jun. ; upon the ground that the original bond and mortgage have never been paid or in any way satisfied ; that the cancelment of record of the mortgage by her trustee was a breach of trust, to which the executors of D. W. Kissam, jun. were privy ; and that the attempted substitution of the mortgage of Samuel Kissam was without her knowledge or assent. On the other hand, the defendants contend that the bond and mortgage of D. W. Kissam, junior, were cancelled, and absolutely discharged, and those of Samuel Kissam substituted therefor, with the full knowledge and assent of Mrs. Stuart. And thus is presented the main issue between the parties.

The determination of this question must depend upon the pleadings and the effect of the answers as evidence ; there being no testimony of any importance, upon the subject. I will first consider the case as against the defendants Joseph Kissam and the executors of D. W. Kissam, jun.

It is admitted by the answers of these defendants, that no money was paid to Joseph Kissam in satisfaction or upon account of the mortgage ; but it is alleged that its amount was allowed to him as a part of the consideration of the conveyance

Stuart v. Kissam.

before mentioned, executed to him by Samuel Kissam and the other residuary devisees of D. W. Kissam, jun. The executors admit notice that Joseph Kissam held the bond and mortgage as trustee for Mrs. Stuart, and they consequently knew, or were bound to know, that this was no such satisfaction of the mortgage as would authorize Joseph Kissam to discharge it. The debt being perfectly secure, he had no right to receive any thing else than money in satisfaction of it. But there was not even a conveyance of lands in satisfaction. No specific lots were given in payment of the mortgage, nor were any lands whatever conveyed to Joseph Kissam as trustee for Mrs. Stuart. In truth, the arrangement was nothing more than that Joseph Kissam should discharge the mortgage, and hold himself accountable for the amount, to his cestui que trust. This arrangement was one which Joseph Kissam had no right to make without the assent of Mrs. Stuart. Was there any such assent?

The answer of Joseph Kissam states, in one paragraph, that the mortgage was cancelled "with the assent and knowledge of the complainants." But immediately following is a statement, that in respect to the rights and interests of Mrs. Stuart in the trust property in question, her husband acted by her consent and direction, as her agent or attorney; that he was always in the habit of receiving the interest on the bond and mortgage, and on several occasions signed receipts therefor in the presence of Mrs. Stuart, and that as this defendant believes and as far as came to his knowledge, the acts of Robert Stuart were approved and ratified by his wife; that all the transactions relative to the trust estate between this defendant and Mrs. Stuart, were conducted through the intervention or agency of her husband, and that as this defendant believes Mrs. Stuart was kept apprized of all such transactions by her husband. Taking these statements together, it is very evident that Mr. Kissam did not intend to swear, of his own knowledge, to any personal assent of Mrs. Stuart to the cancelment of the mortgage. He states expressly, that all his transactions with her were carried on through the medium of her husband, but

that, as he believes, her husband kept her informed of what was being done, and she assented.   These latter statements, being upon information and belief only, are not of themselves evidence, and no testimony has been given in support of them. And I am inclined to think that the statement that Robert Stuart acted as the agent of his wife, in respect to the trust property in question, is not responsive to the bill.   Besides, the answer states that Mr. Stuart was in the habit of receiving the interest upon the bond and mortgage, and frequently signed receipts for it in his wife's presence.   And it is evident that Mr. Kissam draws from these facts the inference of Mr. Stuart's authority to act for his wife generally in respect to the trust property, and that he does not intend to swear, of his own knowledge, to such authority, except as it may be inferred from those facts. It is clear that the authority given by Mrs. Stuart to her husband to collect the interest due to her, did not authorize him to make an agreement for the relinquishment of the security from which that interest accrued.   The other statements contained in the original answer of Joseph Kissam, in respect to the assent of Mrs. Stuart to the attempted substitution of the bond and mortgage of Samuel Kissam, are upon information and belief only, and of course not evidence.   The further answer of Joseph Kissam contains some statements upon that subject apparently of a more positive nature.   But there is still no allegation, in express terms, of any assent by Mrs. Stuart.   It is alleged that an agreement was made between Joseph and Samuel Kissam, with the knowledge of *the complainants*, that Samuel Kissam should receive a conveyance of the forty-two lots and execute a mortgage for $20,000 in order to secure the rights of Mrs. Stuart ; but immediately following is a statement that at the time this was agreed upon, he, Joseph Kissam, "offered to let the complainants have as much more as they desired, but that the said complainants, *or one of them*, professed themselves to be entirely satisfied with the 42 lots, and which were then estimated at $27,000, *by him, Robert Stuart.*" There is then an averment that *the complainants*, at the time of the execution of the bond and mortgage of Samuel Kissam,

Stuart *v.* Kissam.

" were informed truly and knew the contents thereof, and the object, intent, and prominent circumstances attending the same." Taking this statement in connection with that contained in the first answer, that all the transactions between Joseph Kissam and Mrs. Stuart in relation to the trust were conducted through the medium of Robert Stuart, and with the fact that in that first answer the assent of Mrs. Stuart to the substitution of the bond and mortgage of Samuel Kissam, is alleged upon information and belief only, and not as a matter within the personal knowledge of this defendant, I do not think the general statement contained in the further answer, of the knowledge of *the complainants* in respect to the circumstances attending the execution of the bond and mortgage of Samuel Kissam, and the purpose for which they were given, can be fairly construed as an assertion by this defendant, as of his own knowledge, that Mrs. Stuart knew of, or assented to, the substitution of such bond and mortgage for those of D. W. Kissam, jun. Nor do I believe that the defendant Joseph Kissam intended to make such an assertion. This view is strengthened by the circumstance that the answer, as before noticed, contains two other statements, in general terms, of knowledge and assent by *the complainants* in respect to acts of Joseph Kissam, followed by statements showing that the defendant meant to swear to nothing more of his own knowledge than that Robert Stuart assented, and that he deemed the assent of Mrs. Stuart fairly inferrible from this fact and the other facts stated in relation to the agency of Robert Stuart.

But the transaction in this case was of such a nature that something more is necessary to sustain it in a court of equity than mere evidence of assent by Mrs. Stuart. It was a transaction between trustee and cestui que trust, during the existence of that relation, and resulting in an advantage to the trustee and a loss to the cestui que trust. Such a transaction is always scrutinized in a court of equity with a watchful and jealous eye ; and it will never be sustained to the disadvantage of the cestui que trust, except upon the most complete and satisfactory evidence of good faith and fair dealing on the part of

Vol. II.                64

the trustee ; the fullest communication by him of all circumstances affecting the subject matter of the bargain ; the entire comprehension by the cestui que trust of the nature and effect of his acts ; and the absence of any suspicion of undue influence.

In this case, the cestui que trust was a married woman ; the transaction to which it is alleged she assented, was one which could in no event have benefitted her ; and which, if sustained, will in its results prove eminently disastrous to her interests. It was a relinquishment by her, without compensation or equivalent, of two-thirds of the security for the debt which formed the subject of the trust ; and such relinquishment enured to the sole benefit of the trustee. In 1833, Mrs. Stuart, through Colton as her trustee, had sold the whole of the premises in question to D. W. Kissam, jun. for $24,000. Five-sixths of the purchase money had been permitted to remain on mortgage. In less than three years afterwards, Joseph Kissam, her trustee, having acquired the premises subject to the mortgage, claims to have entered into an agreement with his cestui que trust, whereby in lieu of her original mortgage, she received one upon one-third only of the premises, to secure five-sixths of the original purchase money of the whole. It is said that the premises had in the meantime increased in value. Doubtless they had, to some extent, though the greater part of the increase was imaginary. But after giving full weight to this circumstance, and to that of the exaggerated opinions at that time generally entertained in respect to the value of real estate in the city of New-York, I cannot believe that the 42 lots embraced in Samuel Kissam's mortgage, would even at that period, have been deemed by any prudent capitalist a proper security for a loan of $20,000. But that was not the question presented between these parties. Mrs. Stuart had already a mortgage upon the 126 lots. It is impossible to perceive any motive or inducement for her relinquishment of two-thirds of that security, receiving no benefit in return. The substituted bond was made payable at the same time as the original one, so that it cannot be pretended that she gained an advantage by way of greater

permanency of the investment.   Mrs. Stuart, therefore, could derive no possible benefit from the transaction.   All the advantages of the arrangement were to be received by the trustee ; all the risks to be borne by the cestui que trust.   Even had Mrs. Stuart consented, it would have been almost a matter of course, in a court of equity, to have relieved her from her bargain and restored her to her original rights, except so far as adverse interests had been acquired by innocent third parties. The statements contained in the answers of the executors of D. W. Kissam, jun. in relation to the assent of Mrs. Stuart to the transactions in question, are less positive than those of Joseph Kissam.   He having failed in his defence, they have equally failed in theirs.   They were cognizant of all the facts, and privy to Joseph Kissam's breach of trust.

My conclusion, therefore, upon the case as against Joseph Kissam and the executors of D. W. Kissam, jun. is, that the original bond and mortgage have never been lawfully discharged, but are still subsisting securities ; that the bond debt is well established against the estate of Daniel W. Kissam, jun. ; and that all of the lands covered by the original mortgage which are now in the hands of either of these defendants, are subject to its lien.

The rights of Mrs. Stuart are not prejudiced by reason of the conveyance of the 42 lots by Joseph Kissam to William Stewart, in trust for her by her direction.   She at the time expressly reserved her claim upon the original mortgage.   Her whole claim was in jeopardy by reason of the unlawful acts of her trustee, and she had a right to lay hold of the remnant of security which was still in his hands.   The other parties liable for the debt were not prejudiced by her course in this respect, but were benefitted by it, as the claim against them was thereby reduced *pro tanto*. Joseph Kissam was in precarious circumstances, and if the property had been suffered to remain in his hands, it might have been wholly lost.

The defendants, William Onderdonk, Samuel Kissam, (cartman,) and Anna E. Cooke, administratrix, &c. are respectively mortgagees of certain parcels of the lots covered by the original

mortgage.   It is sufficiently established by the testimony, and was finally conceded by counsel upon the argument, that these mortgages were received in good faith, without notice of Mrs. Stuart's rights, and in each case for a valuable present consideration.   As such bona fide mortgagees these parties have a prior equity to Mrs. Stuart; her mortgage, though not in fact satisfied, having been discharged of record by the person having the apparent legal right to discharge it; and the decree will declare their rights accordingly.

These parties are entitled to their costs; but as the plaintiffs had no knowledge of the facts which give them a priority, and were entitled to have those facts established by proof, and as the occasion of their being made parties arose from the wrongful acts of Joseph Kissam and the executors of D. W. Kissam, jun. the costs of these defendants should be paid by Joseph Kissam; and if not collectable from him, then out of the estate of D. W. Kissam, jun.   If they cannot be collected from either of those sources, they must, I think, be paid by Mrs. Stuart. But I do not think it proper to make any present directions in regard to these costs.   They will be reserved until the final hearing.

The equity of redemption in the lots covered by these mortgages appears to be in Joseph Kissam, and is of course subject to Mrs. Stuart's claims.   It is probably of no value, but it will be necessary, in order to entitle Mrs. Stuart to relief against parties subsequently liable, to bring that question to a practical test by a sale of the lots subject to the mortgages, and the decree will contain a direction to that effect.

The defendant James C. Paul holds eight of the lots covered by the original mortgage.   These are the lots which were sold and conveyed to Varnum P. Shattuck and John Ackland, as has been before mentioned.   Shattuck and Ackland gave a mortgage to the executors of D. W. Kissam, jun. to secure a part of the purchase money, upon a foreclosure of which mortgage the lots were purchased by the executors, but the title was taken in the name of Joseph Kissam.   It does not appear that Shattuck and Ackland were bona fide purchasers; but if they

were, Mrs. Stuart had an equitable lien upon the mortgage given by them for the purchase money, and when upon the foreclosure of that mortgage the lots were re-acquired by Joseph Kissam, or the executors of D. W. Kissam, jun. they became subject to the lien of the original mortgage. This would scarcely be disputed. In August, 1842, the lots were conveyed by Joseph Kissam to Paul under these circumstances. Paul was a bond creditor of D. W. Kissam, jun. for about $7000, and placed his claim in the hands of an attorney for collection. Some negotiations took place for the reduction of the debt, and the lots in question were finally conveyed to Paul at an agreed valuation of $2000 upon account of the debt due to him, and that amount was accordingly endorsed as a payment upon the bond. Paul received the conveyance in good faith, without any notice of Mrs. Stuart's rights. Nevertheless he is not entitled to protection as a bona fide purchaser within the principle of the recording acts, for the reason that he gave no present consideration for the conveyance. (*Dickerson* v. *Tillinghast,* 4 *Paige's Rep.* 215.) Upon failure of title to the lots he will be remitted to his original rights as a creditor of D. W. Kissam, jun. and will be in no worse position than he would have been if the conveyance had not been made. If it had appeared that at the time he received the conveyance, his debt was collectable, and that in the interval between that time and his receiving notice of the defect in the title, it had become uncollectable, so that in truth he could not be restored to his original position, a different question would have been presented ; upon which question there is no occasion for my here expressing any opinion. No such fact is set up in the answer, or attempted to be proved, nor is there any reason to suppose its existence.

The question remains to be considered, whether upon the pleadings and proofs, Mrs. Stuart has established her case as against Paul. The defence set up by the Kissams, if it had been sustained by them, would have enured to the benefit of this defendant claiming title under them : but the answers of these defendants are not evidence against Paul, and cannot, in any way, aid Mrs. Stuart in establishing her case against him.

How then stands the case as against this defendant? Mrs. Stuart has proved the original bond and mortgage, and that they were held by Joseph Kissam in trust for her separate use. No evidence has been given by either party in relation to the attempted cancelment of that mortgage, and the substitution for it of that of Samuel Kissam. The answer of Paul merely puts in issue, generally, the allegations of the bill in respect to those transactions, averring his entire ignorance upon the subject. There is then no evidence, independent of the statements contained in the bill, of any fact going to discharge or impair the validity of the original bond and mortgage. The defendant Paul is therefore driven to rely upon the statements of the bill to establish his defence. The statement of the bill is substantially that Joseph Kissam, without any actual payment or satisfaction of the mortgage, made a false certificate of satisfaction, and caused the record of the mortgage to be discharged. Where a defendant relies upon an admission in a bill to establish his defence, he must, as a general rule, take the whole of such admission. He cannot avail himself of such part of the admission as makes in his favor, and reject the residue. (*Craig* v. *Tappin*, 2 *Sandf. Ch. Rep.* 78.) If the defendant Paul had alleged in his answer that the mortgage in question had been actually paid to Joseph Kissam as trustee for Mrs. Stuart, and in support of such allegation had introduced, in evidence, a certificate of satisfaction given by Joseph Kissam, at the time when he had authority to receive payment and give such certificate, I think the certificate would have been prima facie evidence of the fact of payment, and that Mrs. Stuart would have been put to falsify it: the mere suggestion in the bill that the certificate was false would not have shifted the burthen of proof. But the defendant here relies solely upon the statement of the bill to establish the satisfaction of the mortgage. And taking such statement all together, it is merely that Joseph Kissam made a written acknowledgment of the existence of a fact which did not exist.

The issue between the parties is upon the fact of payment, and the onus of proving that fact lies upon the defendant. This is not like the case of a claim to set aside a release admit-

Stuart *v.* Kissam.

ted in the bill to have been given, and where it would be necessary, in order to entitle the plaintiff to any relief, that the release should be *set aside.* There the issue would be upon the validity of the release, and the burthen of impeaching it would be upon the plaintiff. A satisfaction piece is not a release. It does not operate to create a right. Aside from its effect in reference to the recording acts, (and so far as regards Paul, the certificate of satisfaction in this case has no application in that respect,) it is merely evidence of payment, a mere receipt. It is not an instrument which needs to be set aside. As to the statements contained in the bill, in respect to the bond and mortgage of Samuel Kissam, they are merely that the bond and mortgage were executed and a declaration of trust in regard to them made by Joseph Kissam, but without the knowledge or assent of the plaintiffs. Such knowledge and assent are the only facts which could render the attempted substitution of that bond and mortgage of any avail against the plaintiffs, and the bill no where admits those facts, but expressly negatives them. None of these statements can aid the defendant Paul.

I conclude therefore that the lots held by Paul are liable to the claim of Mrs. Stuart; but as Paul received them for a consideration valid as between himself and the estate of D. W. Kissam, jun. he stands, in respect of such liability, in the situation of a surety, and is entitled to require Mrs. Stuart to exhaust all other securities which she has for her debt, including her claim upon the bond against the estate of D. W. Kissam, jun. before resorting to the lots held by him. And the decree must so declare.

The case remains to be considered with reference to the legatees and devisees of D. W. Kissam, jun. who are made defendants. The defendants Edward Kissam and Sarah J. Kissam state in their answers that they have received nothing upon account of the legacies bequeathed to them, and they stand uncontradicted in this respect. The bill as against them must therefore be dismissed with costs.

The defendants Maria Kissam, John Kissam, Charles Sturges and wife, and R. M. Conklin and wife, have each received

Stuart v. Kissam.

a legacy of $400. It would seem that the personal estate of D. W. Kissam, jun. was originally sufficient for the payment of all debts and legacies; but notwithstanding that circumstance, the legatees who have received their legacies are liable to refund to a creditor, if he cannot collect his debt from the executors by reason of their having wasted or misapplied the assets and become insolvent. (*Lupton* v. *Lupton*, 2 *John. Ch. Rep.* 614. *Ward on Legacies*, 380. *Story's Eq. Jur.* § 92.)

Whether this suit, in its present shape, can be maintained against these legatees, consistently with the provisions of the revised statutes relating to suits against legatees and devisees, may be a question of some difficulty. These defendants did not see fit to present that question by demurrer, whereby they might have had a speedy decision upon it. And as the question will only become material in the event of the inability of the executors to respond for the assets they have received, to an amount sufficient to satisfy Mrs. Stuart's claim, and it may therefore not be necessary to determine it at all, and as I have not had the benefit of any extended discussion of the point by counsel, I will not now decide it, but will reserve it until the final hearing.

Upon the merits, I think Mrs. Stuart has established her case against these parties. She has proved the original bond and mortgage, and they have not shown any satisfaction or discharge of it. The principles before discussed, in relation to the case against Paul, are equally applicable to the case against these defendants.

There must be a decree establishing the original bond and mortgage as valid and subsisting securities, (saving the rights of the subsequent bona fide mortgagees,) and for a reference to some suitable person to compute the amount due. It must be declared that the bond and mortgage, and all rights growing out of the same, vested or declared by the decree, are the separate property of Mrs. Stuart apart from her husband; and the referee upon her nomination, will select some suitable person as a trustee for her, in respect to such property. To satisfy the

In the matter of Whiting.

amount reported due upon the mortgage, the 42 lots held by William Stewart must be first sold ; then the equity of redemption in the lots covered by the mortgages to Onderdonk and others, and the other lots (if there be any) in the hands of Joseph Kissam or the executors of D. W. Kissam, jun.—and the proceeds of these sales are to be brought into court for the separate use of Mrs. Stuart. If these sales shall not suffice to pay the amount reported due, the referee will proceed to take an account of the estate of D. W. Kissam, jun. and the debts existing against it, in the usual manner. The rights of Onderdonk, Mrs. Cooke, and S. Kissam, (cartman,) as bona fide mortgagees, to be declared in accordance with this opinion. It must also be declared that the lots held by Paul are liable to Mrs. Stuart's claims, but not until she shall have exhausted all other securities ; and there will be no present direction in regard to the sale of these lots. It must also be declared that if Paul's lots be sold, he shall be remitted to his original rights as a creditor of D. W. Kissam, jun.

The bill must be dismissed as against Edward and Sarah J. Kissam, with costs, to be paid out of the fund to be raised under the decree for Mrs. Stuart's separate use.

All further questions to be reserved ; and the parties to have the usual liberty to apply for further directions, &c.

---

Same Term. *Edmonds*, Justice,