PICKETT *vs.* BARRON and wife, and others.

A subsequent assignee of a bond and mortgage, for a valuable consideration paid at the time, and whose assignment is first recorded, has a perfect title to such bond and mortgage, under the statute, as against a prior assignee thereof, the assignment to whom is not recorded.

To constitute a *bona fide* purchaser, within the meaning of the recording acts, the party receiving the subsequent conveyance must not only have received the same without notice of the prior unrecorded deed, but he must have received the same upon some *new consideration*, advanced at the time, or must have relinquished some security for a pre-existing debt due him.

And when a party has obtained the legal title, if he has paid but a part of the consideration or value of the property—the residue of such consideration being a pre-existing debt—he is to be considered a *bona fide* purchaser, *pro tanto*, only.

ON the 24th day of July, 1855, the defendant Louis Barron executed his bond to Mary Tower, for the sum of $200, and to secure the payment thereof, he, on the same day, with his wife, the other defendant, executed to said Mary Tower a mortgage on real estate in the city of Rochester. This mortgage was recorded in Monroe county clerk's office on the day of its execution. On the 30th day of January, 1856, Mary Tower sold and assigned this bond and mortgage to Elias Pond, for a valuable consideration, and at the time of the assignment, Louis Barron certified in writing that the bond and mortgage were valid, and that there was no defense thereto. On the 23d day of May, 1857, Elias Pond sold and assigned the same to John Greig; and on the same day, Greig assigned the bond and mortgage to Mary E. Barron, the wife of Louis Barron. This last assignment was never recorded; and according to the report of the referee it was understood by Barron and his wife, and Greig, that the same should not be recorded. Prior to the execution of the mortgage, the premises were conveyed to Mrs. Barron, by her husband, or by his procurement. On the 16th day of July, 1857, John Greig sold and assigned this bond and mortgage to the plaintiff, as collateral security for the payment of the sum of $177.68. This action was brought to foreclose the mortgage, and the complaint contained

the usual averments in such cases, and stated among others the above facts.    The defendants, Louis Barron and his wife, answered separately.   Mary E. Barron alleged that John Greig, on the 23d day of May, was the owner and holder of the bond and mortgage, and the moneys due and to grow due thereon; that he on that day sold and assigned the same to her, and that since that time she has been and now is the owner and holder thereof.    Louis Barron, in his answer, alleged that on the 23d day of May, 1857, he paid to Elias Pond, the then holder and owner of the bond and mortgage, the money due thereon.    The issues made by these pleadings were referred, for trial, to the Hon. Addison Gardiner.   He found " that the consideration of the assignment of the bond and mortgage, from Greig to the plaintiff, was $100 in money, and the balance of the sum mentioned in said assignment, $77.68, consisted of an account for money lent and for groceries delivered to said Greig, and to one Studley, which was then and there received and had by said Greig."   He also found that the plaintiff made the advances and received the assignment of the bond and mortgage in good faith and without notice of any claim thereto in behalf of any other person.   And he found, as conclusions of law, from the above facts, that the bond and mortgage were a valid security in the hands of the plaintiff for $177.68 and interest; and that the plaintiff was entitled to judgment for that sum, with costs.   From the judgment entered at a special term, upon this report, the defendants appealed.

*A. Lathrop,* for the appellants.

*G. F. Danforth,* for the plaintiff.

*By the Court,* E. DARWIN SMITH, J.   The assignment by Greig to the plaintiff, of the bond and mortgage in controversy in this action, was a gross fraud.   Whether or not the plaintiff can maintain his title to such bond and mortgage,

acquired by such fraud, is the question arising on this appeal. At the time of the assignment, the bond and mortgage actually and equitably belonged to the defendant Mary E. Barron, but the assignment to her was not recorded. The statute (2 *R. S.* 40, § 1, 3*d ed.*) declares " that every unrecorded conveyance shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, whose conveyance shall be first duly recorded." The plaintiff's assignment was first recorded, and section 69 of the statute declares that the term " *purchaser*," as used in that statute, shall be construed to embrace " every assignee of a mortgage." The assignment from Greig to the plaintiff purports, upon its face, to have been made "as collateral security for $177.68." The referee finds, and the proof clearly justified the finding, that $100 in cash was advanced at the time of the assignment, in consideration thereof, and that the $77.68 was for a pre-existing debt of Greig and one Studley to the plaintiff. The referee also finds that the plaintiff made the advance and took the assignment in good faith and without notice of any other claim to the bond and mortgage ; and this finding on this question of fact is fully warranted by the evidence. The plaintiff, therefore, has an assignment of this bond and mortgage in due form from the apparent owner, as appeared from the record, together with the possession of the bond and mortgage itself, and is a subsequent purchaser in good faith, for a valuable consideration, and his conveyance is first recorded. His title to the bond and mortgage is therefore perfect under the statute.

But the plaintiff is not a *bona fide* purchaser, except as to the $100, advanced at the time of the assignment. So far as relates to the $77.68, that was a past consideration, and the equity of Mrs. Barron is superior to his. To constitute a *bona fide purchaser* within the meaning of the recording acts, the party receiving the subsequent conveyance must not only have received the same without notice of the prior unrecorded

*deed,* but he must have received the same upon some *new consideration* advanced at the time, or must have relinquished some security for a pre-existing debt due him. (*Dickerson* v. *Tillinghast,* 4 *Paige,* 222. *Stuart* v. *Kissam,* 2 *Barb.* 493. *Wood* v. *Chapin,* 3 *Kern.* 509.)

And when a party has obtained the legal title, if he has paid but a part of the consideration or value of the property, he is entitled to be considered a *bona fide* purchaser *pro tanto.* (*Peabody* v. *Fenton,* 3 *Barb. Ch.* 498. *Stalker* v. *McDonald,* 6 *Hill,* 96.) The case last cited, it is true, was the case of a promissory note. But the analogy between the case of a person claiming the rights of a *bona fide* holder of negotiable paper and a person claiming to be a subsequent purchaser for a valuable consideration, under the recording acts, is quite perfect, and there is no reason why the rule of law should not apply to them alike.

So far as the plaintiff took this bond and mortgage as a security for the debt of Greig and Studley, he is in no worse condition than he was before, and his equity is not superior to that of Mrs. Barron. Her prior equitable title and rights should prevail, except so far as the protection of the statute in express terms extends to the plaintiff as "*a subsequent purchaser in good faith and for a valuable consideration;*" that is, so far as a new consideration was presently paid or advanced in consideration of the transfer of such bond and mortgage. The referee therefore erred, so far as he directs judgment for the plaintiff for all of the plaintiff's claim exceeding $100 and interest thereon; and the judgment is so far erroneous. I am by no means sure that the assignment of the mortgage to Mrs. Barron did not merge the equitable into the legal estate so that nothing of interest in the mortgage remained capable of assignment to the plaintiff. But as this point was not raised before the referee, or considered by him, or particularly discussed here, I do not think it proper for the court now to pass upon that question. I think there should

be a new trial, and as neither party has entirely succeeded, neither party should have costs of the appeal.

· New trial granted.

[CAYUGA GENERAL TERM, June 7, 1859. *T. R. Strong, Johnson* and *Smith,* Justices.]