DETERMINED IN THE

# THIRD DEPARTMENT,

AT

# GENERAL TERM,

## November, 1880.

---

ORANGE R. YOUNG, RESPONDENT AND APPELLANT, *v.* THOMAS J. GUY, APPELLANT AND RESPONDENT, IMPLEADED, &c.

*Rights of one taking a mortgage (given, to secure an existing indebtedness,) from one who has theretofore contracted to sell the land—how far the vendee will be protected in payments made to his vendor without notice of the mortgage—as to payments, after notice of the prior mortgage, to an assignee of a mortgage given by the vendee.*

This action was brought to foreclose a mortgage given to the plaintiff by one Scribner, on February 2, 1875, to secure a pre-existing indebtedness, and which had been recorded on the next day after its date. Upon the trial, it appeared that Scribner had, on October 24, 1874, agreed to sell the premises covered by the mortgage, to the defendant Guy, who then paid to him $2,200, and thereafter, and on May 1, 1875, accepted an ordinary warranty deed of the premises, and paid to him the further sum of $1,006.91, and gave back a purchase-money mortgage for $1,300, which was thereafter assigned by Scribner to one Flack.

The plaintiff had no knowledge of Guy's contract, when he took the mortgage, nor had Guy then entered into possession of the permises, nor did Guy know of the existence of the plaintiff's mortgage when he took the deed and gave back the $1,300 mortgage. After the commencement of this action to foreclose plaintiff's mortgage, the defendant Guy, having thus. notice of the plaintiff's rights, paid to Flack the amount of his mortgage.

HUN.—VOL. XXIII.     1

*Held,* that as the plaintiff took the mortgage to secure a pre-existing debt, he was not a purchaser for a valuable consideration, and that he only acquired thereby a lien upon the property to the extent of the interest of Scribner in the unpaid purchase-money due upon the contract.

That as between the plaintiff and Scribner, the former was entitled to the $1,300 secured by the purchase-money mortgage, and that, as Flack acquired no greater title than his assignor had, the plaintiff had the same right to the money secured by the mortgage as against Flack.

That the defendant, having paid the money to Flack after notice of the plaintiff's rights, was not protected thereby, and should be compelled to repay the same to the plaintiff. (LEARNED, P. J., dissented.)

That the payment made by Guy to Scribner on his execution of the contract for purchase, and also that made on the delivery of his deed was valid as against the plaintiff's mortgage.

CROSS-APPEALS from a judgment entered upon the report of a referee. The defendant Guy appealed from the whole of the judgment; the plaintiff Young from so much of said judgment as decides that the plaintiff's mortgage is a lien only to the extent of $1,300 and interest from May 1, 1875.

*R. A. Parmenter,* for Guy.

*Esek Cowen,* for Young.

WESTBROOK, J.:

This action was brought to foreclose a mortgage for $7,000, given by one Scribner to the plaintiff on February 2, 1875, to secure an indebtedness upon two promissory notes of over $6,000, which mortgage was duly recorded on the day immediately succeeding that of its date.

The mortgage covered two pieces of land in the city of Troy, one known as No. 3 St. Paul's place, and the other as No. 5 St. Paul's place. The latter lot had been sold under a prior mortgage, such sale producing no greater sum than the amount due thereon, with the costs of foreclosure.

At the time Scribner executed the mortgage to the plaintiff, he had, by contract dated October 24, 1874, agreed to sell and convey to the defendant, Thomas J. Guy, No. 3 St. Paul's place, that being one of the lots mortgaged to the plaintiff, the conveyance to be made and possession delivered on May 1, 1875, and had on

the day of the execution of the contract received from Guy a payment of $2,200 thereon. When the plaintiff, however, took his mortgage from Scribner, he had no knowledge of the existence of the contract with Guy, nor had Guy taken any possession of the property.

On May 1, 1875, Guy, without any knowledge of the existence of the plaintiff's mortgage, completed his purchase of Scribner, taking a deed of the property, paying on that day to Scribner in cash $1,006.91, and giving his bond, with a mortgage on the premises, as security for its payment, conditioned to pay to Scribner $1,300, as in the bond is expressed. The bond of $1,300, given by Guy to Scribner upon the completion of the purchase, and the mortgage securing the same, were assigned to the Messrs. Flack.

After the plaintiff had commenced this action to foreclose his mortgage, and after service upon Guy of process and papers therein, which gave to him full notice of the plaintiff's mortgage, the defendant Guy paid to the said Messrs. Flack the amount of their mortgage.

The trial of this action was before a referee, upon whose report a decree of foreclosure has been made in favor of the plaintiff, to the extent of the $1,300 mortgage, and interest thereon, given by Guy to Scribner, and assigned and paid to the Messrs. Flack. From this part of the decree the defendant Guy has appealed.

The plaintiff, while conceding that he can have no claim upon the property to the extent of the $2,200 paid by Guy upon the execution of his contract of purchase, nor upon $1,888.29 of the purchase-money paid by Guy as a part of his purchase, in the discharge of liens older than the mortgage sought to be foreclosed, nevertheless insisted, before the referee, that in addition to the amount allowed by the referee he should have a decree for the sum of $1,006.91, and interest thereon, which sum Guy paid to Scribner on the day he took the deed, which day was subsequent to the execution of the mortgage to the plaintiff. The claim made to this $1,006.91 the referee disallowed, and from his report in that particular the plaintiff appeals.

In the foregoing statement of facts many findings of the referee

have been eliminated, for in regard to them there is no dispute, and they throw no light upon the points in controversy.

The first question is, was the plaintiff entitled to a decree awarding to him the amount due upon the mortgage paid to the Messrs. Flack? And the second is, was he entitled to the $1,006.91, paid to Scribner?

The first interrogatory has already been decided by this court in this identical cause, upon a previous appeal (12 Hun, 325). It was then held that the plaintiff took, by his mortgage, a valid lien upon the premises to the extent of the purchase-money unpaid by Guy on his agreement, and that as the mortgage which Guy executed for $1,300, the balance of the purchase-money, was no payment thereof, his subsequent payment to the Messrs. Flack, with knowledge of plaintiff's rights, was not good as against the plaintiff. The reason given by the court for that conclusion was, that if Scribner had retained the ownership of the bond and mortgage, he could not have compelled payment to himself for his own benefit; and as his assignees (the Messrs. Flack), took it subject to all equities which existed against it in the hands of Scribner, they were equally powerless to enforce it. As, however, the soundness of the conclusion reached by a majority of the General Term, that Scribner would have been unable to compel the payment of the Guy mortgage to himself, has been questioned, it may be proper to examine it anew.

As the deed from Scribner to Guy was in consummation of an agreement to sell and convey, which was prior in time to the execution, delivery and recording of the mortgage from Scribner to Young; as such deed was taken by Guy without knowledge of the Young mortgage; and as the Young mortgage was not given to secure an indebtedness or liability incurred on the faith thereof, but represented only a pre-existing debt, the conveyance from Scribner to Guy (as will hereinafter be shown) would have given to the latter a good title to the property as against the Young mortgage, if the whole purchase price had then been paid. The exact form of the deed to Guy is not given in the case. In the evidence it is simply stated to be a " warranty deed," and the date and record are given. The referee finds it to be "an ordinary warranty deed."

This is but a very imperfect description. Was it one containing covenants of warranty and of quiet enjoyment only? If so, there must be an actual eviction to warrant an action for breach of covenant. (*Greenvault* v. *Davis*, 4 Hill, 643; *Fowler* v. *Poling*, 6 Barb., 165.) Did it contain a covenant of seizin? If so, it was broken, provided the grantor (Scribner) did not then have title. (*McCarty* v. *Leggett*, 3 Hill, 134.) Did it covenant against incumbrances? If it did, and there were valid liens upon the property at the time of its execution, an immediate right of action accrued to the grantee. (*Hall* v. *Dean*, 13 Johns., 105.) Or did the deed of conveyance contain all these covenants? Quite possibly it did, for one of that character, in common parlance, passes as frequently by the name of "an ordinary warranty deed," as one which contains simply covenants of warranty and of quiet enjoyment. It is useless, however, to pursue a discussion based upon the form of the deed, for of its exact character the case does not inform us, and its covenants are immaterial to the point we are considering. Any form of deed from Scribner to Guy, which conveyed the premises, and which the latter accepted in good faith, and for which he actually paid the consideration-money, without knowledge of the Young mortgage, would have given a good title. The defense of Guy to the payment of the mortgage given by him to Scribner, does not rest upon the failure of his title, but upon the fact that when Guy had notice of the mortgage given by Scribner to Young he was not justifiable in paying the balance of the unpaid purchase price of the property, which the mortgage he gave to Scribner represented, to Scribner. When the present action was commenced, and summons and complaint were served upon Guy, though Guy had a good title to the property as against Young to the full extent of his payments actually made (as we shall have occasion to show hereafter), he had not yet paid the entire purchase-money. There was still $1,300, and interest from the time of the delivery of the deed to him, due on the sale to him, and the question he was to ask was not, Is my title good? but it was, To whom shall I pay the money which I still owe? It is too clear for argument that with Scribner and Young both before the court (as they actually were, or might have been brought upon Guy's application), if Scribner

had still retained the Guy mortgage, that the payment would have been directed to be made to Young and not to Scribner. However good a payment by Guy to Scribner would have been, if made by Guy without knowledge of the Young mortgage, as protecting Guy, yet if such payment had not in fact been made, and all the parties were before a court of equity, as between Young, who held Scribner's mortgage, given to secure an honest debt, and Scribner, who was endeavoring to obtain what his own mortgage gave to Young, there could be no doubt as to the result. And what is true as between Young, Scribner and Guy, is also true as between Young, the Messrs. Flack and Guy. The Messrs. Flack were but Scribner's assignees, as against whom all the equities in favor of Young as against Scribner equally attached. For these reasons it is clear that the conclusion of the General Term that neither Scribner nor the Messrs. Flack could have compelled Guy, after he was notified of the existence of the Young mortgage, executed and recorded intermediate the making of the agreement of purchase and sale between Scribner and Guy, and its consummation by the delivery of the deed of conveyance, to pay to either the balance of the unpaid purchase-money, was sound, both in equity and in law. Scribner had parted with his right to such unpaid purchase-money to Young by the execution of the mortgage to the latter, and he had nothing whatever owing to him thereon when he undertook to give the Messrs. Flack title thereto.

For these reasons, I fully concur with the majority of the General Term, and although the presiding judge differed from his associates, it was upon the assumption, which the findings of the trial court then required, that the plaintiff knew of Guy's agreement when he took the mortgage sought to be foreclosed. This fact is now expressly found to be otherwise, and by such new finding, it seems to me, all cause for difference is removed. It cannot now be said, as was then plausibly urged, that Young was guilty of laches in permitting Guy to give his bond and mortgage without any notice of the former's rights accruing from his mortgage, thus not only allowing Guy in ignorance to assume an obligation he would not then have incurred, but also by want of such notice enabling Scribner to obtain securities which he subsequently trans-

ferred to the Messrs. Flack. The plaintiff undoubtedly took a valid lien by his mortgage upon the property, to the extent of the purchase-money unpaid by Guy, good as against Scribner or his assignees, and good as against Guy after actual notice thereof, and no act of his, nor want of an act, which perhaps he ought to have taken, if he had been informed of Guy's agreement of purchase with Scribner, which he was not, has misled any of the parties, or given either an equity as against him on that ground. The fact, that his mortgage was given to secure a precedent debt, makes no difference. The owner of the fee, Scribner, like every other owner of property, before he actually conveyed away his interest, could give a mortgage on the property to secure an honest debt, which would be valid as against him to the extent of his ownership, and any purchaser of the property from Scribner was bound, after notice, to pay the balance of the purchase price to the holder of the incumbrance and not to Scribner.

The referee is mistaken in the view taken in his opinion, as to the effect of the mortgage given to the plaintiff. It became a lien on the land to the extent of the mortgagor's interest; the amount due him on the agreement to sell and convey to Guy being the limit thereof (see opinion of ALLEN, J., in *Moyer* v. *Hinman*, 17 Barb., 140, and cases there cited); and even though the referee was right in his supposition that the mortgage was a lien upon the unpaid purchase-money only, and not upon the land, his conclusion, that this suit, brought to foreclose the mortgage, upon the assumption that it bound the realty, was no notice to Guy of the lien upon the unpaid purchase-money, is equally erroneous. The mortgage to Young, being a lien upon the land itself to the extent of the money owing to Guy on his purchase, his action, treating it as a valid incumbrance upon the property, was properly brought, and the efficacy of the notice to Guy, given by such suit, depended upon a correct statement to him of the facts; and a mistake by the holder of the mortgage as to the effect of such facts upon his remedy—that he could enforce the whole amount due upon the mortgage against the property—could not impair the validity of the notice. As, however, the referee, while he differs in opinion from this court as to the rights of the

parties, in his conclusion follows the decision made at General Term, a further discussion of the merits of this point is unnecessary. It is, in fact, *res adjudicata* by virtue of the decision heretofore made in this court.

As to the second question (Was the plaintiff entitled to a decree for the $1,006.91, paid by Guy?), it may also be said, that this was, incidentally, at least, decided when the cause was before us on the previous occasion. Judge Bookes, in his prevailing opinion (12 Hun, 325, see page 327) says : "He was, therefore, protected in his payments made prior to, and at the time he received his deed from Scribner pursuant to the contract of purchase, May 1, 1875, including the liens on the lot then assumed by him, for he was then without notice of the plaintiff's mortgage." As, however, the learned counsel of the plaintiff claims that the opinion was erroneous in this particular, the court having, as he claims, overlooked the fact that Guy was not in possession of the property, whilst in the cases relied upon in the opinion (*Moyer* v. *Hinman*, 13 N. Y., 180 ; *Trustees of Union College* v. *Wheeler*, 61 Id., 88) the purchasers by contract were, it may be well for a moment to consider that question again.

It is true that in the cases just referred to the parties holding contracts of purchase were in possession of the land, which fact was notice sufficient to put all persons dealing with the vendor upon inquiry (see also 5 Abb. N. Y. Dig., 376, paragraphs 134, 135, 136, and cases there cited) but does the want of possession by the purchaser in this case change the result as to the payment made by him on May 1, 1875, which payment was after execution, delivery, and recording of the plaintiff's mortgage?

By the recording act (2 R. S., 6 ed., p. 1138, § 1), and a mortgage is included in its language (Id., p. 1151, § 72), it is provided : "Every conveyance of real estate within this State hereafter made shall be recorded in the office of the clerk of the county where such real estate shall be situated ; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded."

If Guy had, previous to the execution of the plaintiff's mortgage, taken an actual conveyance in fee from Scribner, instead of a mere agreement for one to be given at a future day, and had neither recorded his deed nor gone into actual possession of the premises, such deed would have been invalid as against the plaintiff's mortgage, provided such mortgage had been first recorded, and the plaintiff had taken the same, to use the language of the statute, " in good faith, and for a valuable consideration." If the plaintiff's mortgage had been received in this manner, it seems clear that the defendant Guy's agreement for a conveyance could not place him in a better position than he would have been had he received an actual transfer of the title, and had failed to record the instrument making such transfer. Why then does not the plaintiff's mortgage give to him a lien upon the land, in preference even to the cash payment by Guy at the time of the making of the contract of purchase? The answer is manifest. The plaintiff's mortgage having been given to secure an old debt was not " for a valuable consideration," as required by the recording act to give it a prior equity. (*Dickerson* v. *Tillinghast*, 4 Paige, 215 ; *Pickett* v. *Barron*, 29 Barb., 505.) It was, however, entirely valid as against the owner of the property to the extent of his interest, for such owner could give, as before stated, a valid mortgage on his own property or interest, to secure an honest debt, and it was also perfectly valid as to Guy for his remaining indebtedness upon his purchase, when he received actual notice thereof. But until actual knowledge of the mortgage was brought home to Guy, he was protected not only in payments made prior to the execution of the mortgage, but in all subsequent ones made to his vendor in conformity with his contract of purchase. This follows from the fact, that the recording act only protects the holder of a subsequent mortgage, when it is given for actual value, parted with on the faith of its execution; but the mortgage of the plaintiff, as it was not so taken, only operated as an assignment to him of Scribner's interest in the property as security for the debt, and he was therefore bound, like any other assignee, to give the debtor notice of the assignment, if he wished to be protected against a payment to the assignor. The payment, therefor, of $1,006.91, made by Guy, on

May 1, 1875, to his vendor, without actual knowledge of the mortgage of the plaintiff, was good, and for the amount thereof no remedy can be given to the plaintiff; but the payment to the Messrs. Flack, as they had no greater rights than Scribner, having been made after notice of the plaintiff's rights, can, as has been previously stated, be no more held to be valid as against the plaintiff than if made to Scribner after the same notice had been given.

This conclusion does ample justice to both parties. It is just to Young, because the record of his mortgage, which was given to secure an old debt, was no notice to Guy of its existence, and to prevent payments by Guy to his covenantee or his assignee, he was bound to give actual notice thereof. It is just to Guy, because, when the commencement of the action, by the service of process on him, informed him of Young's claim, he could have brought the money due on his mortgage into court, and compelled Young and the Messrs. Flack to litigate their rights, at their own expense, or at the expense of the fund, as the court might ultimately determine. He was not compelled to side with either claimant, but having elected to side with the Messrs. Flack he assumed the risk of their right to demand the money still due upon his purchase, which his mortgage represented, and the legality of its voluntary payment by him to them. It follows that the judgment entered upon the report of the referee should be affirmed, but as neither party has succeeded upon his appeal, neither should recover costs thereon as against the other.

BOCKES, J., concurred.

LEARNED, P. J., dissenting:

When this case was here before (12 Hun, 325), the jury had found that the plaintiff had notice of the contract with Guy at the time when he took his mortgage. The majority of the court held, however, that notwithstanding such notice, the mortgage was valid against Guy, to the extent of the payments made by him, after actual notice of the existence of the plaintiff's mortgage. On the

last trial the referee found that the plaintiff had no notice of the contract with Guy, when he took his mortgage.

If we assume, however, that, although the plaintiff had no notice of Guy's contract, yet that, as his mortgage was taken to secure a precedent debt, he gained no rights against the money paid by Guy, the further question arises : could Guy have successfully defended against the bond and mortgage held by the Flacks ? If not, then he should be protected in respect to the money paid on the mortgage, as well as in respect to the money paid at the time when he received his deed. The referee has found that Guy had no defense to that bond and mortgage.

Scribner executed to Guy " an ordinary warranty deed " of the premises. Guy gave back this $1,300 bond and mortgage for a part of the purchase-money, and went into possession of the premises and so remains. If sued upon this bond and mortgage, his defense would be that, at the time when he received his warranty deed, the premises were incumbered by the mortgage to the plaintiff. I think that the decisions hold that this is not a good defense as long as Guy is not evicted. (*Parkinson* v. *Sherman*, 74 N. Y., 88 ; *Sandford* v. *Travers*, 40 Id., 140 ; *Curtiss* v. *Bush*, 39 Barb., 661 ; *Edwards* v. *Bodine*, 26 Wend., 109 ; *Leggett* v. *McCarty*, 3 Edw. Ch., 124 ; *Abbott* v. *Allen*, 2 Johns. Ch., 519 ; *Bumpus* v. *Platner*, 1 Id., 213.)

This appears more strongly when we consider that, from the time of the contract, Guy was the equitable owner of the land ; and that, as above stated, the plaintiff parted with nothing for his mortgage, and therefore acquired no rights as against the dealings and contracts of Guy, made in good faith.

It may be said that the mortgage to the plaintiff operated as an assignment of Scribner's rights in the land and in the contract, so that the plaintiff was entitled to have whatever Scribner should receive from Guy. That may be so. The plaintiff may have been equitably entitled to compel Scribner to assign to him the $1,300 mortgage given by Guy on the purchase. But that is not a claim that the mortgage is not binding on Guy ; on the contrary, it is a claim that, being binding on Guy, it should have been transferred by Scribner to plaintiff. In fact, the plaintiff has never insisted

that this $1,300 mortgage rightfully belonged to him; but has insisted that his own mortgage was valid, and that this was subject thereto. And when Guy was threatened with foreclosure by the Flacks, I do not see that he could have interpleaded them and the plaintiff. For the plaintiff never claimed any interest, legal or equitable, in the $1,300 mortgage.

To illustrate : Suppose that Scribner, after executing the plaintiff's mortgage for a precedent debt, had assigned to a third party for a valuable and present consideration all the moneys to be received from Guy on the contract. It does not seem to me that Guy could have resisted the claim of such third party to the moneys.

Judgment affirmed, without costs to either party.