### No. 7570.

### McCloskey, Bigley & Co. vs. Wingfield & Bridges.   Charles J. Bush, Surety.

Where a rule on the surety on a release-bond is made returnable in less than ten days, he cannot complain that he was not allowed ten days to answer in, when it appears that he voluntarily appeared and filed an answer two days before the return-day of the rule.

Interrogatories on facts and articles in any case cannot be taken for confessed against a plaintiff who has actually answered, merely because his oath was not taken under a commission from the court before which the case is pending.

Interrogatories will be taken for confessed against the plaintiff who has not answered, without any formal motion to that effect.

The surety on a release-bond can set up no ground of defense to the judgment rendered against his principal, which the principal could not set up. If the judgment is good against the principal, it is also good against the surety.

Where a defendant dies, after having filed an answer, and his administratrix is made party to the suit, it is not necessary that an answer should be made by her, or default taken against her.

A valid judgment may be rendered against a partnership and its assets by citing the living partner, and the legal representatives of those who are dead.

The administrator of a deceased defendant may be brought into a court of ordinary jurisdiction, and made party to a suit which was pending against the deceased at his death.

The plea that a judgment against the principal is null because it was rendered on evidence that was inadmissible, cannot be raised by the surety.

In order to justify recourse on the surety it is sufficient if the sheriff's return show that he could not after diligent search and inquiry find the principal, or any property of his; and that the plaintiff's counsel was called on, and could give no information on either subject.

Where one of the principals on a bond is dead, the plaintiff is dispensed from pursuing his succession, before moving against the surety.

The binding effect of a second release-bond on the surety thereon is not impaired by the fact that the first release-bond had another surety, and had been canceled on account of the insufficiency of that surety.

What is omitted in the conditions of a release-bond will be supplied by the court, and what is added to them will be ignored.

It is the duty of the court to fix the amount of a release-bond with reference to the value of the property released.

APPEAL from the Fourth District Court, parish of Orleans.   *Houston, J.*

*Bentinck Egan* for plaintiffs and appellees.

*George L. Bright* for surety, appellant.

---

Bentinck Egan, for plaintiffs and appellees, contended:

First—That a defense to the rule on the surety to hold him liable, setting up that defendant had not the notice he was entitled to by art. 239, C. P., should have been set up as an exception, and a judgment on it provoked, and not having done that, that defendant waived it. 31 A. 681.

Second—A similar rule was taken on 31st August, 1875, upon which a judgment of dismissal was rendered against plaintiffs, who appealed

to the Supreme Court. The judgment rendered by the Supreme Court has never been recorded and registered in this court, and therefore all subsequent proceedings had with a view of fixing the pretended liability of this respondent are null and void.

Third—That said judgment of dismissal is *res adjudicata.*

Fourth—That the surety is bound by the judgment against the principal. 2 R. 510 ; C. P. 259 ; 3 N. S. 575.

Fifth—That Wingfield was cited and made a party to this suit. C. P. 198 ; 29 A. 72 ; 17 L. 42 ; 14 A. 870.

Sixth—That no default was necessary against the administratrix of Wingfield, who had been made party to the suit. C. P. 21.

Seventh—That after the administratrix of Wingfield had been made a party to the suit against Wingfield & Bridges a valid judgment could be rendered against that firm. C. P. 21, 361, 120 ; 9 R. 142 ; 3 A. 547.

Eighth—A suit brought against a defendant in a court of ordinary jurisdiction may be continued in that court against the succession of the defendant. 30 A. 25 ; 29 A. 837.

Ninth—That a final judgment cannot be attacked on the ground that it was rendered on illegal evidence. 1 A. 123 ; 2 R. 510.

Tenth—That it is not necessary to issue execution against the succession of the principal, before proceeding against the surety. 1 A. 122 ; 10 A. 284 ; 11 A. 78 ; 20 A. 512 ; 22 A. 297 ; 21 A. 284.

Eleventh—That assuming, for argument sake, that the bond was not in conformity to law, it would not be null. The law would re-form it, so as to make it in conformity with the conditions required by law. It has been repeatedly held by this court that, in whatever manner a party binds himself, he shall remain bound, may be true, in conventional obligations, *but the rights of parties, and the effect of bonds, in judicial proceedings, are to be tested by the law directing them to be taken.* Welsh vs. Thorn, 16 L. 188 ; Slocomb vs. Roberts, 13 L. 173 ; Welsh vs. Barrow, 9 R. 355 ; Baker vs. Morrison, 4 A. 373 ; 2 L. 392. It has been repeatedly held that the law formed part of the contract in all judicial bonds. 12 A. 177, *ib.* 720 ; 20 A. 179.

Twelfth—That the plea of the general issue made by the surety on a release-bond admits the execution of the bond. C. P. 324 ; 8 N. S. 300 ; 1 L. 488 ; 2 L. 420 ; 5 L. 33 ; 14 L. 361 ; 19 L. 86 ; *ib.* 88.

George L. Bright, for the surety, contended :

First—That the surety had not had the ten days previous notice required by art. 259, C. P.

Second—A similar rule was taken against him on 13th June, 1878, which was discontinued, and the plaintiffs have not paid the costs of the rule.

The rule is on page 63. Its discontinuance, page 66. The costs were not paid.

Art. 492 C. P. After discontinuing the suit the plaintiff may bring his action anew, provided he has paid the costs of the first suit.

The article is especially applicable to a suit discontinued. Howard vs. Copley, 10 An. 504.

Third—   *   *   *   *   *

Fourth—   *   *   *   *   *

Fifth—The judgment rendered in favor of McCloskey, Bigley & Co., and against the firm of Wingfield & Bridges, composed of James H. Wingfield, deceased, herein represented by Mrs. Mary Ann Wingfield, administratrix, and against H. Q. Bridges, individually and *in solido*, is null and void because

I. McCloskey, one of the plaintiffs, was, at the date of the institution of the suit and at the date of the judgment, dead; and there existed no such firm as McCloskey, Bigley & Co. See 1 R. 519; 16 A. 162; 22 A. 23; 29 A. 19; 29 A. 647.

II. James H. Wingfield was never a party defendant to this suit, and therefore the administratrix of his succession could not be made a party in his place.

III. The administratrix having been made a party by order of court, and cited to answer the supplemental petition, no judgment could be rendered against her without issue formed by a judgment by default or answer, and respondent charges that no default was taken nor was an answer filed; the exception filed was never dismissed.

IV. Citation addressed as it was, to Mrs. Mary Ann Wingfield, administratrix of the succession of her late husband, James H. Wingfield, issued and served after the death of Wingfield, does not authorize a judgment against the firm of Wingfield & Bridges, nor against the succession of James H. Wingfield.

V. That the Fourth District Court had no jurisdiction to make the administratrix of the succession a party to the suit.

VI. That the judgment against Wingfield & Bridges was not legally obtained, because it was rendered on inadmissible evidence, which facts the surety may plead. 2 R. 512.

VII. The plaintiff has not complied with art. 259, C. P.: no *fi. fa.* ever issued against the estate of Wingfield; the writ was not issued in accordance with the judgment; no demand was made on the defendants; and no sufficient return was made to enable the plaintiffs to proceed against the surety. See 11 R. 266; 10 R. 138; 13 A. 264; 4 L. 301; 17 L. 416; 10 R. 63; 1 A. 123.

VIII. The bond signed by Bush is null and void, because the sheriff

had already taken the bond signed by Barbot as surety, and released the seizure, and had no authority to take the bond signed by Bush. The conditions of the bond are illegal and unauthorized by law. C. P. 259 ; 16 La. 173, 188 ; 9 Rob. 535 ; 4 A. 373 ; 7 An. 539, 570 ; 12 An. 68 ; 2 La. 398 ; 5 M. 629 ; 16 La. 188 ; 4 An. 3 ; 4 An. 59.

IX.   That there being no allegation of the value of the property released, the value cannot be shown.

X.   *That the value must be shown.* C. P. 279 ; 4 A. 373 ; Greiner's C. P. art. 259 ; Revised Statutes of 1870, sec. 107.

The opinion of the court was delivered by

SPENCER, J.   Plaintiffs, alleging themselves to be a commercial firm composed of Peter G. Bigley & N. J. Bigley, doing business under name and style of McCloskey, Bigley & Co., sued the defendants, Wingfield & Bridges, another firm, on an account, and attached a lot of coal, mules, carts, etc.

The defendants got an order of release of said attachment, conditioned upon their giving bond with good security, in the sum of $1500. They gave bond, with one Barbot as surety, and the sheriff turned over the property to them, and returned the bond into court.   On the day following, the sheriff representing to the court that the defendants had deceived him and furnished an insolvent surety, the court ordered the bond to be canceled and returned to the sheriff, and directed him to reseize the property under the writ of attachment, which was still in his hands.   The sheriff thereupon again took possession of the property, and the defendants, without objection on their part, or on that of the plaintiffs, came forward and executed another bond of release with Bush as surety, and the property was again delivered to them.

After filing a motion to dissolve the attachment, the defendants filed their answer.   On trial of the rule to dissolve it was sustained, and plaintiffs appealed to this Court, by whose decree the attachment was reinstated.   Afterward, on 21st May, 1875, judgment was rendered in favor of plaintiffs against the firm of Wingfield & Bridges, and against the partners, *in solido*, for $976.   Defendants appealed, and this court declared the judgment a nullity, because Wingfield had died before its rendition and his representatives had not been made parties.   Wingfield died after answer, but before judgment.   On returning and filing this decree, plaintiffs caused Mrs. Wingfield, the administratrix of her husband's estate, to be made party defendant, and she was accordingly cited.   The administratrix excepted to the jurisdiction of the court, claiming that the Second District Court alone had jurisdiction.   This was overruled.   She filed no further answer, and no default was entered against her.   The case was tried again, and resulted in a judgment for·

plaintiffs against the firm, and against the estate of Wingfield, and against Bridges, *in solido*, with lien and privilege, etc. No appeal was taken from this judgment, which was rendered 8th May, 1878. On 15th July, 1878, plaintiffs caused execution to issue on this judgment; and on 21st September, thereafter, the sheriff returned the same, *nulla bona*, certifying that "after diligent search and inquiry, defendants herein could not be found; was credibly informed that they were non-residents of this city. H. H. Walsh, representing B. Egan, plaintiffs' attorney, was unable to give any information as to defendants, and failed to point out property for seizure, and the sheriff could not find any property belonging to the defendants herein," etc.

On 6th November, thereafter, plaintiffs took this rule against Bush, the surety, to make him liable on the release-bond. The rule was made returnable on the 18th November, and was served on the 8th. On the 16th November, two days before the return-day, Bush filed his answer, setting up numerous defenses, which we will of necessity have to consider at length and in their order:

First. He complains that there were not ten days given him to answer. We have seen that he answered two days before the return-day. Besides, the case was on the return-day continued till 16th December. He certainly had abundance of time, and suffered no possible injury.

Second. The costs of a previous rule dismissed by plaintiffs have not been paid. Of this there is no proof.

Third. The judgment of plaintiffs against the firm of Wingfield & Bridges, composed of Wingfield, deceased, and Bridges, is null and void, because

1. McCloskey, one of the plaintiffs, was at the date of the institution of the suit, and at date of judgment, dead; and there existed no such firm as McCloskey, Bigley & Co.

2. James H. Wingfield was never a party defendant to the suit, and, therefore, the administratrix of his succession could not be made a party in his place.

3. No judgment could be rendered against the administratrix until a default was entered, or answer filed by her.

4. Citation of the administratrix of Wingfield does not authorize a judgment against the firm of Wingfield & Bridges, nor against the succession of Wingfield.

In order to substantiate the first above ground of nullity, the defendant annexed to his answer interrogatories to be answered by each and every of the plaintiffs; and the court ordered them to be so answered. Peter G. Bigley answered before a Louisiana commissioner in

Memphis, where he then resided. N. J. Bigley did not answer. On the trial, Bush moved to take the interrogatories for confessed, because one of the plaintiffs had neglected to answer, and because the answers of the other were taken before a Louisiana commissioner, but not under a commission from the court. The judge *a quo* refused the motion, without assigning of record any reasons. It is manifest that the interrogatories could not be taken for confessed against the plaintiff who did answer. The fact that the oath was taken before a commissioner of this State, but not under a commission from the court, is not, under the Code of Practice, a ground for taking the interrogatories for confessed. It might be a good ground to refuse them admission in evidence for plaintiff. There is no doubt of the right of defendant to have the answers of both defendants. See 3 M. 503 ; 14 L. 297.

And there is no doubt of his right to have the interrogatories taken as confessed against the party failing to answer, and this without any formal motion, and on the trial. See 7 L. 522 ; 10 L. 713.

The difficulty is in determining the effect of so taking them as against one partner, and not as against the other. We incline to think that under the Code of Practice as it now exists (art. 354), when the answers of one establishes a state of fact different from that implied from the silence of the other, it would be necessary to treat it as we would the conflicting evidence of two plaintiffs sworn as witnesses, and, therefore, decide according to the weight of evidence.

But we are dispensed from meeting this difficult question in this case. The suit was brought by Peter G. & N. J. Bigley, as being the persons owning the claim and composing the firm of McCloskey, Bigley & Co. The judgment so recognized them, and decreed them to be entitled to the amount sued for. That judgment, plaintiffs' counsel correctly maintains, is conclusive on the defendants' security, because it is conclusive on them. It is clear that the defendants could not set up such a defense, neither can the surety. See Quine vs. Mayes, 2 R. 510 ; Alley vs. Hawthorn, 1 A. 122, 126. The surety's obligation is to satisfy the judgment against his principal. C. P. 259. If that judgment is good against the principal, the surety cannot dispute its validity.

The question, therefore, whether P. G. & N. J. Bigley were the rightful holders and owners of the claim sued upon, could not be raised by Bush, and the interrogatories propounded in that regard were immaterial and irrelevant. We will remark, however, that as a matter of fact, there is abundance of evidence in the record, outside of the answers of P. G. Bigley, to show that the two Bigleys were the true owners of the debt.

The second ground of nullity is directly contradicted by the record. Wingfield was a party defendant, and filed his answer as such, and,

therefore, upon his death, his administratrix was properly made a party to represent him.

The third ground is not good.   Where a party dies after answer, the suit does not abate.   There was no necessity of an answer by the administratrix or of a default against her.

The fourth ground is equally untenable.   The plaintiffs' prayer was for a judgment *in solido* against the firm and each of its members.   We see no reason why a judgment may not be rendered against a partnership and its assets by citing the living partners and the legal representatives of those who may be dead.

It is in the fifth place urged that after Wingfield's death his administratrix could not be brought into the Fourth District Court, where the suit was pending.   After great consideration, we have decided this question to the contrary in Bussey & Co. vs. Nelson, 31 A., not reported.

It is urged in the sixth place that the judgment against Wingfield & Bridges was not legally obtained, because on the trial there was introduced in evidence by plaintiffs the testimony of certain witnesses, including that of one of the defendants, taken on the trial of the rule to dissolve the attachment.   Without saying whether that testimony was properly or improperly admitted, its admission is no ground of nullity in favor of the surety.   The case of Quine vs. Mayes, 2 R. 510, cited by counsel, decides that it is absolute nullities that the surety may urge.

It is next urged that proper effort has not been made to obtain payment from the principals ; that the sheriff's return is insufficient.   We have quoted that return.   He says he could not after diligent search and inquiry find the defendants or any property of theirs ; that the plaintiffs' counsel was called upon, and could give no information on either subject. We think the return sufficient, especially where there is no effort to show that defendants had any property.   As to Wingfield's estate, his death dispensed the plaintiff from pursuing that.   See Alley vs. Hawthorn, 1 A. 122 ; 10 A. 284, and 543 ; 11 A. 78, 271.

It is further urged that the bond signed by Bush is null and void, because there had been a previous bond given with Barbot as surety. We have stated the facts in this regard, and need not repeat them.   The Barbot bond was canceled by the order of the court and returned to the sheriff, and the new bond given without objection.   And why should not a defendant who has given an insufficient or fraudulent bond be permitted to give another, to make good his security ?   The fact that the law makes the sheriff liable also, if he takes an insufficient bond, does not prevent defendant giving further security.   It is his duty to do so. No law prevents it or ought to prevent it.

So far as relates to the conditions of the bond, there is no difficulty.

What is omitted we will supply, and what is added we will retrench. This is well settled. The plaintiffs in the rule allege that the bond was given for $1500, under order of the court. The law makes it the duty of the court to fix the bond with reference to value, and the averment was sufficient to authorize proof of the value of the property, which is shown by abundant evidence to be as much or more than the amount of the bond.

We thus, at great length, reach the conclusion that of the multitude of defenses made by defendant in the rule none of them can avail him. This was the result reached by the judge *a quo*, and he condemned the surety to pay the judgment up to the amount of his bond.

The judgment is correct, and it is affirmed with costs.

Rehearing refused.