## No. 15.

### Thomas J. Pickett et al. vs. Mattie G. Gilmer et al.

Before the surety on the bond of the Administrator of a Succession can be made liable or sued, a breach in the condition of such a bond should have been judicially declared in a proper proceeding, conducted contradictorily with the principal, and the latter's liability established by a judgment of a competent Court.

And in case of the death of the principal on the bond, and his succession is insolvent, it is necessary that the insolvency should be established by the proper judicial proceedings.

The plea of *Lis pendens* must prevail in a suit against the surety, when the issues it presents are pending in an Opposition to the Account of the Administrator.

APPEAL from the Second Judicial District Court, parish of Bossier. *Drew*, J.

J. D. Watkins for Plaintiff and Appellants.

Land & Land for Defendants and Appellees.

First—No suit shall be instituted against any surety on any appeal bond, nor on the bond of any administrator, tutor, curator, executor, or syndic, until the necessary steps have been taken to enforce payment against the principal. R. C. C., 3066 ; Acts of 1842, p. 303.

Second—The steps necessary to be taken against the principal before

any suit can be instituted against his surety, under the decisions of this Court, are as follows : First, to obtain judgment against the principal ; second, to issue execution against his property, and third, a return of *nulla bona*, in all cases if the principal is alive. If the principal is deceased, the first step to be taken, is to obtain a judgment on a settlement and homologation of his account, if administrator, or tutor, or, by a direct action against his succession ; and second, to show judicially the insolvency of his estate. Kemper vs. Splane, 4 A. 486 ; Wilson vs. Murrell, 6 R. 68 ; Phelps vs. Sawyer, 7 A. 557 ; Lovit vs. Castille, 13 A. 563 ; Alley vs. Hawthorn, 1 A. 121 ; Wells vs. Roach, 10 A. 543 ; Trimble vs. Bredita, 11 A. 271 ; Raulinson vs. Barbeson, 12 A. 630 ; Levois vs. Thibodeaux, 13 A. 264 ; Succession of Lynch, 14 A. 235.

Third—The plaintiffs in this case have not taken the *first necessary step* to enforce payment against the principal. They have obtained no judgment against the principal nor against his succession.

Fourth—The plaintiffs filed an opposition to the homologation of the account rendered by the principal in his lifetime, as administrator, in which they set up the claim, or a part of the claim on which this suit is instituted, but they abandoned that opposition, which still remains undisposed of by any judgment of the court.

Fifth—The administrator of the succession of the principal accepted the claim of the plaintiffs, and placed it on a tableau of debts in his succession without prejudice to any of the rights of any party, or parties to certain suits or judicial proceedings then pending, to which suits the plaintiffs were parties ; the principal and the surety on his bond were parties. This acceptance of the administrator was without any effect as to these parties litigant, and did not even interrupt prescription.

Sixth—The acceptance of a claim by an administrator is not a judgment against the heirs and creditors of the deceased, nor against other parties in interest, nor is the claim as to them liquidated by the acceptance, because it may be opposed and finally rejected. R. C. C. 1063, 1064, 1065, 1066 ; C. P. 984, 985, 986, 987 ; Rheil vs. Morten, 29 A. 16 ; Succession of Poussin, 27 A. 296 ; Gaines vs. Hennen, 24 Howard, 553 ; Minor vs. Harding, 4 L. 382 ; Orr vs. Thomas, 3 A. 582 ; Bank of La. vs. Dejean, 12 R. 16.

Seventh—When another action is pending, between the same parties, for the same object, and growing out of the same cause of action, the cause will be dismissed on the exception of *lis pendens*. C. P. 335 ; Ingram vs. Richardson, 2. A. 839 ; Dick vs. Gilmer, 4 A. 520 ; Kline vs. Freret, 5 A. 494.

J. A. Snider and Richard W. Turner on the same side.

The opinion of the Court was delivered by

TODD, J. Nathan Pickett died in the parish of Bossier in 1853. On the 6th of January, 1854, William Milton Pickett, his son, was appointed administrator of his succession, and on the same day executed his bond, as administrator, for one hundred and twelve thousand four hundred and fifty dollars, with J. B. Gilmer as surety.

On the 9th of December, 1857, the said Pickett, administrator, filed an account of his administration, which, on the 6th of February, 1858, was homologated, and on the 2d of December, 1859, he filed a second account, which was also homologated on the 4th of August, 1860.

On the 9th of July, 1866, the said administrator filed his third and last account. This account showed a balance in his favor of about twelve hundred dollars, but before the homologation of this account, in the month of August, 1866, he died.

Subsequently to the appointment of W. M. Pickett as administrator and the execution of his bond, J. B. Gilmer, the surety thereon, also died.

On the 4th of February, 1879, the plaintiffs, heirs of Nathan Pickett, instituted this suit against the defendants, the heirs of J. B. Gilmer, for one hundred and four thousand and twenty-two dollars. The suit was brought on the bond executed by W. M. Pickett as administrator of the succession of Nathan Pickett, and the amount sued for was alleged to be the amount of the indebtedness of said Pickett, growing out of his acts, as administrator of the succession of Nathan Pickett, for which the defendants, as heirs of J. B. Gilmer, the surety, were alleged to be liable.

To this suit the defendants filed an exception substantially as follows:

First. It was denied that the proper steps had been taken to make the debt out of the principal of the bond, or the legal representatives of the principal, which was alleged to be a condition precedent to any action against the surety, and that the suit was, therefore, premature.

Second. The plea of *lis pendens* was interposed against the action, based on certain oppositions and other proceedings in the Parish Court of Bossier parish, alleged to be still pending and undecided.

Third. A plea to the jurisdiction.

There was judgment sustaining the two first points of the exception relating to the pleas of prematurity and *lis pendens* and overruling the plea to the jurisdiction, and from this judgment the plaintiffs have appealed.

The plea to the jurisdiction seems to be virtually abandoned by the counsel for the defendants, and there is no force in it, and it therefore remains to us to consider the other two pleas embraced in the exception.

In support of these pleas—prematurity of the suit and *lis pendens*—the following facts are relied on, a recital of which becomes necessary:

After the death of W. M. Pickett, administrator of the succession of Nathan Pickett, in August, 1866, as stated, J. Pinckney Harris, on the 11th of September, 1867, was appointed administrator of his succession. After his appointment (on the 28th of March, 1868,) he commenced a proceeding by rule directed against the heirs of Nathan Pickett to cause the last account filed by the said W. M. Pickett, administrator, a short time previous to his death, to be homologated. This account, as before stated, showed a balance of about $1200 in favor of this administrator. About the same time that this proceeding by rule was commenced, the heirs of Nathan Pickett filed their opposition to the account. In this opposition they set up substantially the same claims against the deceased administrator as are contained in the suit before the court. This opposition was never tried.

About the same time that this proceeding was instituted, the heirs of J. B. Gilmer brought suit in the District Court of Bossier against the heirs of Nathan Pickett, the object of which was to cause this same account of W. M. Pickett, administrator, to be homologated, and the bond given by him, with J. B. Gilmer as surety, to be cancelled.

We find from the record that no answer was filed by the defendants in this suit and no further proceedings taken in it.

The Act of 1842, p. 303, Section 6, which is embodied in and now forms part of Art 3066 of R. C. C., declares:

" No suit shall be instituted against any surety on any appeal bond, nor on the bond of any administrator, tutor, curator, executor or syndic until the necessary steps have been taken to enforce payment against the principal."

The defendants contend that these necessary steps required by this statute have not been taken against the principal on this bond, the administrator of Nathan Pickett's succession, or against his legal representatives, to warrant this suit against them as the representatives of J. B. Gilmer. They contend that the liability of the administrator and the amount of his liability should first be fixed by a judgment and the proper steps taken to enforce this judgment, or, in the event that the principal or his succession was insolvent, that this insolvency should be judicially declared before suit could be brought against his surety.

We find no judgment in the record against W. M. Pickett, administrator, nor against his heirs or legal representatives, but the counsel for the plaintiffs relies upon the acknowledgment made by J. Pinckney Harris, administrator of the succession of W. M. Pickett, of the claim which forms the basis of this suit, as equivalent to a judgment and sufficient to fix the liability of W. M. Pickett, administrator, and the amount of that liability. We find from the evidence, that after filing a rule against the heirs of Nathan Pickett to show cause why the last account of W.

M. Pickett as administrator should not be homologated as above stated. Harris, administrator, filed a statement of debts due by the succession of W. M. Pickett on the 28th of September, 1871, in which statement of debts or tableau appears the following acceptance of Harris, administrator, to-wit:

"A debt due the minors, Thomas G. Pickett, Alice G. Pickett, Kosiesko Pickett, and Nathan Pickett, amounting to $104,022, one hundred and four thousand and twenty-two dollars, with the rank of legal mortgage, the rights of the parties being fixed at the date of the death of the tutor, Wm. Milton Pickett, it being anterior to the 1st January, A. D. 1868 ; but this claim is accepted without any prejudice to the rights of any party or parties in opposition filed in cases of S. W. Vance vs. Jas. A. Pickett et als., No. 1311, and of succession and heirs of Nathan Pickett, opposition to account of administrator and tutorship of W. M. Pickett, No. 1328."

This tableau was homologated, and the following is the judgment of homologation :

"Succession of Wm. Milton Pickett $\left\{\begin{array}{l}\text{On application for homologation of}\\\text{tableau of debts.}\end{array}\right.$

In the above entitled cause, by reason of the law and the evidence, and by further reason of the publication of said tableau of debts for the time prescribed by law, and no opposition having been made thereto within the time prescribed by law, it is ordered, adjudged and decreed, that the tableau of debts filed by J. Pinckney Harris, administrator in the succession of W. M. Pickett, deceased on the 28th of September, A. D. 1871, be approved, homologated and made the judgment of the court *except as to the item of one hundred and four thousand and twenty-two dollars, opposed by the administrator of Kerr*, the opposition to said item continued ; and it is further ordered that the administrator of said succession pay said debts according to the privilege and rank assigned to and given said debts on the tableau of debts filed as aforesaid in said succession.

Done and signed in open Court, on this, the 13th day of November, 1871.

[Signed]                                L. W. BAKER,
                          Parish Judge of Bossier Parish, Louisiana."

The suit of S. W. Vance vs. Jas. A. Pickett, No. 1311, referred to in the foregoing acceptance, was the suit mentioned in which the heirs of J. B. Gilmer had sought to have the last account of W. M. Pickett, administrator of the succession of Nathan Pickett, homologated. It will be remembered that this account showed a balance in favor of Pickett, administrator, and against the succession of Nathan Pickett, of about $1200, and of course was in direct opposition to and conflict with the

claim asserted by the heirs of Nathan Pickett and accepted by Harris, administrator. By the account filed by Pickett, administrator, he sought to recover of the heirs of Nathan Pickett $1200, and it was this balance which the suit of Vance vs. Pickett, 1311, sought to have adjudged against the heirs of Nathan Pickett.

By the claim asserted in the tableau filed by Harris, administrator, the heirs of Nathan Pickett sought to recover of the succession of W. M. Pickett $104,022. The acceptance of Harris, administrator, was made subject to this opposition thus existing against the claim. In other words, his acceptance of the claim was not absolute and unconditional, but recognized and continued the conflict between the opposing claims mentioned, and settled nothing.

The judgment of homologation by its terms approved the entire tableau, except this large claim mentioned in favor of the heirs of Nathan Pickett, which was specially excepted, and the opposition to it made by Kerr, administrator, continued. This did not constitute a judgment in favor of the claim or a positive judicial recognition of it. It did not give any more effect to this judgment of homologation or diminish the effect of this opposition thus continued, that it was made by a party incapable of standing in judgment. The opposition existed and the judgment did not approve and homologate the claim, but expressly excluded it from approval.

There was, then, nothing in the acceptance of the administrator of W. M. Pickett's succession, nor in the proceedings connected with the tableau of debts, and with the homologation of the same, that operated as a judgment against the succession of W. M. Pickett, deceased, or was equivalent thereto.

When we consider the character of the claim, the amount of the same, and that it was wholly unliquidated, we are aware of no authority in the administrator to make any acknowledgment of the same absolutely binding and conclusive on the succession, or that would justify a judgment on the same without the proper proof of its correctness.

Art. 985, C. P. provides : " If the claim be *liquidated*, and be acknowledged by the curator or testamentary executor or administrator, he shall write on the evidence of the claim, or on the paper which he shall annex to it, a declaration signed by him, and stating that he has no objection to the payment of such claim ; after which the bearer of such claim shall submit it to the judge, that it may be ranked among the acknowledged debts of the succession."

" Art. 986 : " If the claim *be not liquidated*, or if the testamentary executor, curator or administrator have any objection to it, and consequently refuses to approve it, the bearer of the evidence of such claim, whatever be its amount, may bring his action against the curator or

administrator, in the ordinary manner, before the Court of Probate where the succession was opened, or before the District Court, according to the amount involved, and may obtain judgment in the same manner as in other cases."

These articles, properly construed, seem to confine the authority of an administrator or executor touching the acknowledgment or acceptance of claims against successions to such as are liquidated, and to require all others unliquidated to be established by proof—and several decisions of this Court favor such a construction—19 L. 441 ; 5 R. 270. The fact established by the record that this acknowledgment or acceptance of the claim in question against the succession represented by him was made by the administrator, Harris, after having sought to effect the homologation of an account which was utterly inconsistent with the existence of such a claim, is not calculated to add to the force and effect of such action on the part of the administrator.

But was a judgment against the principal of this bond, or his succession, a necessary step before instituting suit against the surety or his legal representatives?

The law in relation to judicial sureties, the nature and extent of their obligations, the mode and manner of fixing their liability, has been a subject of misconception and uncertainty resulting, in some degree, from decisions seemingly inharmonious, and it is important that it should be settled.

The condition of an administrator's bond is, in substance, " that the administrator will well and truly discharge the duties of his appointment according to law." The obligation that the surety on such a bond assumes is that his principal will faithfully carry out and fulfill this condition of the bond, and should he fail to do so that he, the surety, will pay the losses or damages that may result from such failure.

When we reflect on the character and condition of such a bond, the true nature of the surety's obligation, in connection with the positive requirement of the law to which we have referred, prescribing that all necessary steps should be taken against the principal of such bond before proceeding against the surety, and after a careful review of all the previous decisions of this Court on the subject, we are constrained to conclude that a breach in the condition of such a bond should be judicially declared in a proper proceeding conducted contradictorily with the principal, and his liability established by a judgment of a competent court, before the surety can be made liable or sued on such bond.

Wilson vs. Murrell, 6 R. 68.

Kemper vs. Splane, 4 A. 486.

Phelps vs. Sawyer, 7 A. 551.

Lobit vs. Castille, 13 A. 563.

We have been referred to but one single case, rendered since the act of 1842 was passed, which conflicts in the least with these views—the case of the succession of James Lynch, 14 A. 235 ; and in that case the statement of the facts are so meagre that it does not appear with certainty that there was no judgment against the administrator before the suit was instituted against the surety. If such was the case, and it can be construed as countenancing the doctrine contended for by the plaintiff's counsel, opposed, as we conceive it to be, to the letter and spirit of the laws on this subject, and the adjudications rendered therein, it is declared overruled.

It is, however, urged that when the principal of a judicial bond dies before any judgment is rendered against him, inasmuch as no execution can be taken out against his succession, and the course pursued prescribed by the articles of the Code to be taken against the principal, if living, to fix the liability of his surety, that therefore, in such a case, a judgment against the succession of the principal is not required to fix the liability of the surety ; and we are referred particularly to the case of Alley vs. Hawthorne, 1 A. 122, as sustaining this position. This was a suit on an appeal bond, and it will be seen from an examination of the case that a judgment was rendered against the principal, although he had become a bankrupt before the rendition of such judgment ; and we fully indorse the principle, asserted in that case, that when such judgment is rendered against the principal, who dies or becomes a bankrupt, and the insolvency of his estate is shown by the proper evidence, that the law does not require the creditor to await the settlement of such insolvent succession before bringing suit against the surety.

In case of the death of the principal we deem it necessary, however, that the insolvency of his succession should be established by the proper judicial proceedings.

The evidence fails to satisfy us that the necessary steps were taken against W. M. Pickett, or his succession, to authorize this suit against the heirs of Gilmer, his surety.

We are also satisfied that the issues presented by this suit could have been tried and determined in the opposition made by the heirs of Nathan Pickett to the last account rendered by W. M. Pickett, administrator. As we have stated before, the claims on which that opposition was based were, substantially, the same as are embraced in this suit. Nor do we agree with plaintiff's counsel that the issues raised in that proceeding could not have been legally determined because no administrator to succeed W. M. Pickett had been appointed to the succession of Nathan Pickett. The counsel himself states that this succession had been accepted by the heirs, who had made a partition of the property and, therefore, there was no necessity for the appointment of another

administrator, since the heirs, under these, circumstances, were the only proper parties to represent in that proceeding the interest that, previous to their acceptance, had vested in the succession.   So, too, in the suit No. 1311 of Vance et al. vs. Pickett et al., above mentioned, the issues tendered, as shown by the record, were substantially that W. M. Pickett at the time of his death was not indebted to the succession of Nathan Pickett, nor was Gilmer, his surety, indebted, but that, on the contrary, the succession of Nathan Pickett was owing W. M. Pickett a balance on his account, and that the plaintiffs in that proceeding, the heirs of Gilmer, were legally entitled to have cancelled the administrator's bond upon which Pickett was principal and Gilmer surety.   Here, then, was another suit in which all the matters in controversy in this case might have been settled.   The plaintiffs in that case, who are the defendants in this suit, by the character of the suit and allegations of their petition, directly tendered the issues and invited a trial of the same, being those involved in this case, the question in that or in this being of the liability of W. M. Pickett, administrator, to the succession and heirs of Nathan Pickett, and the amount and extent of that liability, if it existed.   In that case, still pending, all the claims that the plaintiffs are now seeking to prosecute in this suit might have been finally determined and enforced. In these facts and proceedings disclosed by the record, we do not find wanting any of the elements or requisites constituting the plea of *lis pendens*, and that plea, too, must be sustained.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.