**MOSELY v. OVERTON et al. \***

**No. 4653.**

Court of Appeal of Louisiana.
Second Circuit.

March 29, 1934.

McGregor & Hunt, of Rayville, for appellants.

Tobin R. Hodge, of Rayville, for appellee.

DREW, Judge.

In the early part of 1931, C. H. Mosely filed suit against E. G. Overton for an account due and' coupled with his suit a writ of attachment under which the following described property was seized:

- 2 Avery Plows
- 2 Black Land Plows
- 1 V-Harrow
- 1 Moline Cotton Planter
- 1 Avery Sweep Stock
- 1 McCormick Gee Whiz
- 1 Mare mule, name, Belle
- 1 Mare mule, name, Mattie
- 1 Dodge Standard Six Automobile

The lower court' rendered judgment for plaintiff and sustained the writ of attachment. The case was appealed to this court. The suspensive appeal bond was executed by E. G. Overton with F. H. O'Neal and Thomas M. Sayre as sureties thereon. The judgment of the lower court was affirmed by this court and appellant mulcted in damages for frivolous appeal. The judgment of this court was rendered on December 16, 1932. (See 144 So. 753.)

On February 10, 1933, plaintiff had issued a fi. fa. in the case and the above described property, which had been released under a forthcoming bond during the pendency of the suit, was surrendered to the sheriff by the bondsmen and the property was advertised for sale for the 11th day of March, 1933. Un-

*Rehearing denied May 4, 1934.

der said· fi. fa., the property was seized by the sheriff on February 17, 1933, and E. G. Overton, judgment debtor, was personally served with notice of seizure, and advertisement of the sale was in the paper beginning February 25th and ran for three issues. The judgment debtor, E. G. Overton, died on February 26, 1933, after the property had been seized and advertised for sale.

On the morning the property was to be sold under said advertisement, the sheriff had the property in his possession at the front door of the courthouse and at the time for legal sales to be held started to offer the property for sale, in accordance with the fi. fa. and advertisement, when the attorney for plaintiff, the judgment creditor, informed the sheriff that E. G. Overton was dead and ordered him not to hold the sale and to release the property, which was done by the sheriff, and his return on the fi. fa. was made accordingly as follows:

"On the day of sale the attorney for plaintiff instructed me to release the seizure and return the writ unsatisfied, with the notation that the defendant, E. G. Overton, was deceased. I therefore released the said property from seizure and I am returning this writ wholly unsatisfied, as per the instructions of the attorney for plaintiff. This 11th day of March, 1933."

The sureties on the appeal bond were present for the sale with the intention of seeing that the property seized, which is shown to be of a value in excess of the judgment, interest, and costs, held by plaintiff, sold for enough to pay the judgment, interest, and costs, else they would bid it in. The sureties were not consulted by plaintiff or his attorney, and in no manner consented to the action of plaintiff, through his attorney, in stopping the sale or in releasing the property from seizure.

On April 17, 1933, the present suit was filed by the judgment creditor against the sureties on the appeal bond and rule issued on them to show cause why they should not be condemned to pay the judgment, interest, and costs which were due by E. G. Overton, then deceased. Plaintiff alleged that at the time of the death of E. G. Overton, he was insolvent and that no proceedings for the opening of his succession had been had, except that Mrs. Elizabeth Walden Overton had been qualified as natural tutrix of her minor child, Mildred Overton. He further alleged that, due to the death of E. G. Overton, his estate being insolvent and his succession not having been opened, it was not practical for plaintiff to endeavor to collect his judgment by proceeding against his es-

tate; that he is not required by law under these circumstances to show a fi. fa. returned nulla bona before proceeding against the sureties on the suspensive appeal bond. He alleged demand, as required by law.

For answer, defendants in rule set out the facts above alleged and prayed that the demands of plaintiff in rule be rejected. The lower court rendered judgment on rule in favor of plaintiff, as prayed for, and subrogated the defendants in rule to all rights formerly held by plaintiff in the judgment against E. G. Overton. From this judgment, defendants in rule have appealed.

■ The allegation made by plaintiff that the estate of E. G. Overton is insolvent is not borne out by the testimony. It is shown that the estate consisted of a well-improved farm of 160 acres, with a value of more than $4,000. The only indebtedness against it is a mortgage, principal, and interest which amounts to about $2,900. The only other indebtedness is a mortgage taken by one of the sureties on the forthcoming bond, after the attachment and seizure of the property thereunder, against the attached property to secure him as a bondsman. Under this testimony, we are of the opinion that the estate is solvent. The only heir of deceased is his minor child, Mildred Overton, whose mother has been appointed her natural tutrix. Her mother and the deceased had been divorced long prior to his death.

■ Plaintiff's contention is set out in his brief as follows:

"This case comes clearly within the exception to article 596 of the Code of Practice which provides that the sureties cannot be proceeded against until the necessary steps have been taken to enforce payment against the principal. The Supreme Court of this state laid down the exception in the line of decisions beginning with 1 La. Ann. page 122, in the case of Alley v. Hawthorn, wherein the Court said:

" 'The surety on an appeal bond is not entitled to the benefit of discussion. Civil Code, art. 3035. If the judgment appealed from be affirmed and an execution against the principal be returned unsatisfied, the liability of the surety is fixed. The creditor is not bound to discuss the whole estate of the principal. He is in no case bound to do more than to take out an execution; and where, in consequence of a change in the condition of the estate of the principal, it cannot be reached by that process, no act is required on the part of the creditor to secure his immediate recourse against the surety.'

"This has been followed, recognized and enforced as a principle in the following cases:

"Cartwright v. McMillen, 3 La. Ann. 687; Wogan v. Thompson, 10 La. Ann. 284; Wells v. Roach, 10 La. Ann. 545; R. H. Fraser & Co. v. Thorpe, 11 La. Ann. 47; Trimble v. Brichta, 11 La. Ann. 272; Rawlings, Duncan & Co. v. Barham, 12 La. Ann. 631; Levois v. Thibodaux, 13 La. Ann. 264; Succession of Lynch, 14 La. Ann. 236; Murison v. Butler, 20 La. Ann. 513; Simonds v. Heinn, 22 La. Ann. 297; Bourgeat v. Adams, 11 La. Ann. 78; Lepretre v. Barthet, 25 La. Ann. 124; LeBlanc v. Massieu's Succ., 27 La. Ann. 325; New Orleans, M. & C. R. Co. v. Dugan, 27 La. Ann. 465; Whan v. Irwin, 27 La. Ann. 706; McCloskey, Bigley & Co. v. Wingfield & Bridges, 32 La. Ann. 43, and 44; Pickett v. Gilmer, 32 La. Ann. 998; Ricks v Gantt, 35 La. Ann. 923.

In Alley v. Hawthorn the judgment executed was an ordinary judgment carrying no special privilege on any particular property that was in custodia legis.

Cartwright v. McMillen is not in point.

Wogan v. Thompson holds that where there has been a change in the condition of the defendant so that the creditor cannot take out execution or make a levy under execution, the liability of the surety is at once fixed.

Wells v. Roach holds that where an execution cannot be taken out against the property of the debtor, where his succession is under administration, the creditor may proceed against the surety. There was no attachment coupled with the suit and no privilege claimed.

In R. H. Fraser & Company v. Thorpe, 11 La. Ann. 47, the court held contrary to plaintiff's contention. The syllabus of the case correctly states what was held by the court:

"A judgment had been obtained by plaintiff against J. T., with privilege on the interest of J. T. in certain goods belonging to the firm of J. T. & Co., which had been attached, and were bonded by J. T. & Co., who had intervened and claimed the goods. J. T. & Co. obtained a judgment recognizing their right to the goods, 'subject to the payment of such sum of money as may be shown to be the value of the interest of defendant (J. T.) therein.' In an action against the surety, on the bond of J. T. & Co., Held: that no judgment could be rendered until the amount of the interest of defendant, J. T., in the property attached was shown."

In Bourgeat v. Adams, 11 La. Ann. 78, the court held:

"Where an administrator obtains a judgment against a former administrator, whose estate, as shown by the tableau, is utterly insolvent, no further proceedings need be had by him against the estate of the former administrator, to entitle him to judgment against the surety of the former administrator."

Trimble v. Brichta, 11 La. Ann. 272. In this case, while the case was pending on appeal, the defendant died and his succession had been opened. The curator was made a party to the suit. Judgment was affirmed and plaintiff took a rule on the surety on the suspensive appeal bond. The judgment carried with it no privilege and the court held, if the judgment debtor was dead, the creditor could proceed against the surety on the appeal bond without previously issuing execution against the judgment debtor.

Rawlings, Duncan & Company v. Barham held that where the judgment creditor issued a fi. fa. against the judgment debtor, which was returned nulla bona, he could proceed by rule against the surety on the appeal bond.

In Levois v. Thibodaux the court held the surety on an appeal bond could not be made liable where the sheriff's return to the writ of fi. fa. does not show that a demand was made on both plaintiff and defendant to point out property, the parties being present or represented in the parish.

In Succession of Lynch the court held the obligation of the surety on an administrator's bond can be enforced at once without proceeding against the estate of the principal, which is shown to be insolvent by a tableau of distribution filed in the due course of administration.

In Murison v. Butler, the doctrine laid down in Alley v. Hawthorn was followed because the principal was admitted to be insolvent.

In Simonds v. Heinn, 22 La. Ann. 297, the court held, when the sheriff's return on the writ of fi. fa. shows the judgment debtor has gone into bankruptcy, thereby putting it out of the power to pursue him any further under execution, the liability of the surety on the appeal bond became fixed.

The case of Lepretre v. Barthet is not in point, being a suit against a surety on a forthcoming bond to release property provisionally seized.

In LeBlanc v. Succession of Massieu the court affirmed the Alley v. Hawthorn decision.

In New Orleans, M. & C. Railroad Co. v. Dugan, 27 La. Ann. 465, the court held:

"The defense of the surety on an appeal bond furnished by the plaintiffs, on the ground that the necessary proceedings were not had against the principals, can not be sustained, two executions having been issued without effect, and the United States Circuit Court having specially enjoined the execution of any writ against the plaintiffs."

The case of Whan v. Irwin is not in point.

The case of McCloskey, Bigley & Co. v. Wingfield & Bridges is a suit on a forthcoming bond where the property was not delivered to the sheriff and the judgment debtor could not be found, and it was not shown he had any property. It has no bearing on this case.

Pickett v. Gilmer is a suit against the surety on an administrator's bond. The administrator had died and his succession was insolvent. The court held the insolvency of the principal's succession should be established by judicial proceedings before the surety could be held. The court, on page 991 of 32 La. Ann., had the following to say:

"Before the surety on the bond of the administrator of a succession can be made liable or sued, a breach in the condition of such a bond should have been judicially declared in a proper proceeding, conducted contradictorily with the principal, and the latter's liability established by a judgment of a competent Court.

"And in case of the death of the principal on the bond, and his succession is insolvent, it is necessary that the insolvency should be established by the proper judicial proceedings."

In Ricks v. Gantt the court held that when the judgment against the principal has been obtained, execution issued and returned nulla bona, and the insolvency of the principal established, no other steps are necessary to justify recourse against the surety.

We have attempted to carefully analyze each of the cases upon which plaintiff bases his case and have found that none of them sustains his position in the case at bar. In not one of the cases cited are the facts in any wise similar to these facts. There was no privilege recognized in any of the cases and there was no property "in gremio legis" upon which the judgment creditor had a privilege. In all of the cited cases it is evident that execution against the principal or his estate was impossible, either due to bankruptcy, insolvency, or a stay of execution against his property by the federal court. There is no such condition existing as to the estate of E. G. Overton. It was a solvent estate. The property which had been seized under fi. fa. and advertised for sale was actually in the possession of the sheriff and there was final judgment in plaintiff's favor sustaining the attachment and recognizing a privilege against this particular property. The only heir of deceased was a minor and a tutor had been duly appointed and qualified for her, and in the inventory of the estate of Overton, the personal property in the hands of the sheriff was not inventoried. The fi. fa. issued, seizure under same was made, personal notice of seizure served upon the judgment debtor, and the property advertised for sale, all prior to the death of the judgment debtor. If his death alone was sufficient to vitiate the privilege of plaintiff and dissolve the attachment against this property, and to automatically cause the seizure to be released, we have been cited to no authorities to that effect and have found none

Article 21 of the Code of Practice states:

"Actions do not abate by the death of one of the parties after answer filed."

Article 120 of the Code of Practice reads in part as follows:

"If one against whom there was a cause of action die, leaving one heir only, the suit shall be carried on against such heir as it would have been against the deceased."

We realize that the sale would have been a nullity without first making the heir of the deceased a party to the proceedings. This could have been done with little trouble and expense.

The obligation of a surety on an appeal bond is fixed by the Code of Practice. Article 579 provides:

"In the appeal bond, it must be set forth in substance, that it is given as surety that the appellant shall prosecute his appeal, and that he shall satisfy whatever judgment may be rendered against him, or that the same shall be satisfied by the proceeds of the sale of his estate, real or personal, if he be cast in his appeal, otherwise that the surety shall be liable in his place."

The appeal bond in this case contains these identical provisions. Article 596 provides as follows:

"If, on the execution of the judgment of the appellate court, there is not sufficient property of the appellant to satisfy the judgment and costs, the appellee may obtain judg-

ment against the surety given by the appellant; provided, that no suit shall be instituted against such security, until the necessary steps shall have been taken to enforce payment against the principal."

There are some exceptions to this rule, as is demonstrated in the cases we have analyzed, which were cited by plaintiff. This case does not fall under any of these exceptions. In this case from the date of the attachment until its release from seizure by the seizing creditor, there was ample property in the hands of the sheriff to satisfy plaintiff's judgment, and it was held by the sheriff for that very purpose. If it has been lost, it was through no fault of the sureties. But for plaintiff's own action, his judgment would have been satisfied out of this property. Castor State Bank v. U. S. Fidelity & Guaranty Co., 172 La. 497, 134 So. 406.

In this case the property under seizure was released under an improvident court order and the sureties on the appeal bond were held not liable.

We are of the opinion that plaintiff has failed to take the necessary steps to enforce the payment of his judgment against the principal, as required by law, and until he has done so, no suit can be instituted against the sureties on the appeal bond.

In this court defendants have filed an exception of no cause of action which will have to be determined on the record as made up at the time it was filed, and, under our finding in this case, the exception is good and will be sustained.

It therefore follows that the judgment of the lower court is reversed and the exception of no cause of action filed here is sustained; and plaintiff's suit is dismissed at his costs.